## UNITED STATES DISTRICT COURT
### for the
### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **GENERAL MOTORS ACCEPTANCE CORPORATION,**  )<br>  )<br>  )<br>      **Plaintiff**  )<br>  )<br>**Vs.**  )<br>  )<br>**CAMILLERI BROS, CHEVROLET OF HOLYOKE, INC., ET AL.,**  )<br>  )<br>  )<br>      **Defendants**  )<br>  ) | **CIVIL ACTION NO.**<br>**CA98-4012-NMG**<br><br>a8-40128<br><br>DOCKETED |

## MEMORANDUM OF REASONS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANTS, THOMAS CAMILLERI, RICHARD CAMILLERI AND CAMILLERI BROS., INC. d/b/a C & C SUBARU ON COUNTS II, III AND IV
### And
### CONCISE STATEMENT OF FACTS NOT IN DISPUTE PURSUANT TO LOCAL RULE 56.1

### I.      Introduction

The plaintiff, General Motors Acceptance Corporation ("GMAC") seeks entry of summary judgment against defendants, Richard Camilleri and Thomas Camilleri (the "Camilleris") pursuant to agreements entered into between GMAC and the Camilleris, by which the Camilleris guaranteed the liabilities and obligations of another defendant, Camilleri Bros. Chevrolet of Holyoke, Inc. ("Chevrolet") to GMAC (the "Guarantees"). The liabilities and obligations of Chevrolet (now in bankruptcy) to GMAC are currently in excess of six hundred eighty-two thousand dollars ($682,000.00).   Pursuant to the

Guarantees, this money is due and owing to GMAC by the Camilleris.  GMAC also seeks entry of summary judgment against the Camilleris and Camilleri Bros., Inc. d/b/a C & C Subaru ("C & C Subaru") on Counts III and IV to allow a reach and apply of all funds and proceeds of C & C Subaru to be used to satisfy the debts and obligations of the Camilleris to GMAC.

## II.     Concise Statement of Undisputed Facts

GMAC is engaged in the business of extending credit and financial accommodations to automobile dealers to enable them to acquire and maintain inventories of new and used motor vehicles. Such extensions of credit are accomplished both by direct loans and payment on behalf of the debtor to manufacturers and/or distributors of new motor vehicles of the price of new motor vehicles purchased by debtor on a secured deferred payment basis as inventory. **Amended Verified Complaint, Page 3, ¶9.**

GMAC entered into financing arrangements with Chevrolet on November 15, 1989. The arrangements were subsequently modified on August 18, 1995 and July 26, 1996. **Amended Verified Complaint,  Page 4, ¶6.**

Chevrolet made, executed and delivered the following documents which evidence its liabilities and obligations and the security arrangements taken by GMAC:

(1)     Loan Agreement dated August 18, 1995; **Amended Verified Complaint, Exhibit A.**

(2)     Wholesale Security Agreements dated November 15, 1989, August 18, 1995 and July 26, 1996; **Amended Verified Complaint, Exhibit B.**

(3)     Promissory Note in the principal amount of $2,000,000 dated August 18, 1995. **Amended Verified Complaint, Exhibit C.**

To induce GMAC to enter into the above agreements and extend floor plan financing in the amount of $2,000.000, Thomas Camilleri and Richard Camilleri signed guaranties whereby both Thomas Camilleri and Richard Camilleri each unconditionally guaranteed all of Chevrolet's obligations to GMAC. **Amended Verified Complaint, Page 4, ¶8.** Copies of such guaranties dated November 15, 1989 and August 23, 1995 are attached to the **Amended Verified Complaint as Exhibit D.** See also **Defendants' Answer to Amended Complaint ¶ 8** (The defendants Thomas Camilleri and Richard Camilleri admit to guarantying the obligations of Camilleri Bros. Chevrolet, Inc.).

On June 18, 1998, GMAC counted and inventoried the new and used car inventories of Chevrolet. On that date, the inventory at the Chevrolet consisted of 77 vehicles with an aggregate secured balance of $1,075,331.20. **Amended Verified Complaint, Page 5, ¶10.**

Just 8 days later, on June 26, 1998, Chevrolet, closed its business and by various sales sold thirty-eight (38) new cars subject to the security interest held by GMAC. **Amended Verified Complaint, Page 5, ¶11.**

In the normal course of the business of Chevrolet, sold on average fourteen (14) new motor vehicles per month. **Amended Verified Complaint, Page 5, ¶11.**

Defendants, Chevrolet, Thomas Camilleri and Richard Camilleri, sold and otherwise converted the proceeds of thirty-six (36) new and used motor vehicles with an aggregate secured balance of $682,685.72. **Amended Verified Complaint, Page 5, ¶12.**

Defendants, Chevrolet, Thomas Camilleri and Richard Camilleri failed to make payment therefor in accordance with paragraphs 3 and 5 of the Loan Agreement. **Amended Verified Complaint, Page 5, ¶12.**

A schedule of the inventories held by defendant, Camilleri Bros. Chevrolet, prior to the conversion is attached as **Exhibit E to the Amended Verified Complaint.** A schedule of the vehicles, which have been sold and otherwise converted by defendants, Chevrolet and Thomas Camilleri and Richard Camilleri, is attached as **Exhibit F to the Amended Verified Complaint.**

At the time of the filing of this complaint the Camilleris owned all of the stock of C & C Subaru issued and outstanding. **Amended Verified Complaint Pages 12 and 13, ¶¶ 37 and 41.** See also **Amended Answer of Camilleris ¶ 41** ("The defendants admit that the Defendants Richard Camilleri and Thomas Camilleri owned all shares of stock of C & C Subaru . . .").

The Camilleris intended to use the proceeds of C & C Subaru to pay the obligations to GMAC. **Amended Verified Complaint Pages 12 and 13, ¶¶ 37 and 41 and Amended Answer of Camilleris ¶¶ 37 and 41.** [1]

### III.    Argument

*A.    Summary Judgment Standard*

Summary judgment should be granted if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c). A "genuine issue" for summary judgment purposes, is one that is supported by such evidence that "a reasonable jury drawing favorable inferences" could resolve it in favor of the non-moving party. *Ward v. Mass. Health Research Inst., Inc.*, 209 F.3d 29, 32 (1st Cir. 2000), *citing, Smith v. F.W. Morsely & Co.*, 76 F.3d 413, 427 (1st Cir. 1996).

---

[1] This is arrived at in a rather convoluted way as GMAC's allegation was that the defendants did not intend to use the proceeds of C & C Subaru to pay off GMAC. The defendants denied those allegations, which can only mean

The role of the summary judgment procedure is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Schubert v. Nissan Motor Corp., 148 F.3d 25, 32 (1st. Cir. 1999)* (quotation and citation omitted). Thus, the procedure enables parties to avoid an unnecessary trial when only one outcome can ensue. *Vivid Technologies, Inc. v. American Science & Engineering, Inc., 200 F.3d 795, 806 (Fed. Cir. (Mass) 1999).*

The District Court should not hesitate to grant summary judgment where, as here, there is no genuine issue as to any material fact and it is clear that GMAC is entitled to judgment as a matter of law. F. R. Civ. Proc. 56(c); Anderson v. Liberty Lobby, Inc., 477 U. S. 242, 247-48 (1986).

## *B.     Breach of Contract - Chevrolet*

The Loan Agreement dated August 18, 1995 provides as follows:

> 5.      At the time [Chevrolet] sells or otherwise disposes of inventory in respect of which [GMAC] has advanced funds pursuant to paragraph three (3) of this Agreement, [Chevrolet] will forthwith pay over to [GMAC] the amount of money GMAC has advanced in respect of such personal property plus interest, less any previous payments made

In or about June 1998, Chevrolet sold or otherwise disposed of inventory (the "Converted Inventory") in respect of which GMAC had advanced funds pursuant to paragraph three (3) of the Loan Agreement. GMAC had advanced six hundred eighty-two thousand six hundred eighty-five and 72/100 ($682,685.72) dollars in respect of the Converted Inventory and to date has not received any payments with respect to the same. Chevrolet is accordingly in breach of paragraph 5 of the Loan Agreement and is indebted to

---

that the defendants admit to intending to use the proceeds of C & C Subaru to pay off the obligations to GMAC.

GMAC in the amount of six hundred eighty-two thousand six hundred eighty-five and

72/100 ($682,685.72) dollars plus interest with respect to such breach.

The Wholesale Security Agreement (August 18, 1995) provides as follows:

[Chevrolet] shall not mortgage, pledge or loan the vehicles and shall not transfer or otherwise dispose of them except as next hereinafter more particularly provided . . .

[Chevrolet] understand[s] that [it] may sell and lease the vehicles at retail in the ordinary course of business. [Chevrolet] further agree[s] that as each vehicle is sold, or leased, [it] will, faithfully and promptly remit to [GMAC] the amount [GMAC] advanced or [has] become obligated to advance on [Chevrolet's] behalf to the manufacturer, distributor or seller, with interest at the designated rate per annum then in effect under the GMAC Wholesale Plan . . .

[Chevrolet] shall pay all expenses and reimburse GMAC for any expenditures, including reasonable attorney's fees and legal expenses, in connection with GMAC's exercise of any of its rights and remedies under this agreement.

In breach of its obligations under the Wholesale Security Agreement, Chevrolet

transferred or otherwise disposed of motor vehicles other than at retail in the ordinary course

of business.  In further breach of its obligations under the Wholesale Security Agreement,

Chevrolet failed to promptly remit to GMAC the amount GMAC advanced or became

obligated to advance on Chevrolet's behalf to the manufacturer, distributor or seller.  This

amount totaled six hundred eighty-two thousand six hundred eighty-five and 72/100

($682,685.72) dollars.  Chevrolet further failed to remit the interest due on this amount.  As

a result of Chevrolet's failure to remit the moneys due, and in connection with GMAC's

exercise of its rights under the Wholesale Security Agreement, GMAC has incurred and is

continuing to incur attorney's fees and legal expenses.

Chevrolet is accordingly in breach of the Wholesale Security Agreement and as a

result of such breach is indebted to GMAC in the amount of six hundred eighty-two

thousand six hundred eighty-five and 72/100 ($682,685.72) dollars, plus interest, plus

attorney's fees and legal expenses.

Defendant, Chevrolet owes the plaintiff the sum of six hundred eighty-two thousand six hundred eighty-five and 72/100 ($682,685.72) dollars, together with interest, expenses and the attorneys fees and costs incurred by plaintiff as a consequence of such default and the institution and prosecution of this action. Plaintiff has made demand for payment which demand Chevrolet has ignored and failed to honor.

### C.    Guaranty – Richard Camilleri and Thomas Camilleri (Count II)

The Guaranty dated August 23, 1995, executed by both Richard Camilleri and Thomas Camilleri provides as follows:

> [Richard Camilleri and Thomas Camilleri do] hereby unconditionally guarantee the payment of all indebtedness of [Chevrolet] to GMAC, including any indebtedness assigned to GMAC arising in connection with the GMAC's Installment Sales Finance Plan, together with all costs, expenses and attorney's fees incurred by GMAC in connection with any default of [Chevrolet].

By the very plain language of the guaranty, defendants, Richard Camilleri and Thomas Camilleri, as the guarantors of Chevrolet's obligations to plaintiff, owe plaintiff the sum of six hundred eighty-two thousand six hundred eighty-five and 72/100 ($682,685.72) dollars, together with interest, expenses and the attorneys fees and costs incurred by plaintiff as a consequence of such default and the institution and prosecution of this action.

The defendant do not raise any defenses to being obligated under the guaranty but rather acknowledge to having guaranteed the certain obligations of Camilleri Bros. Chevrolet.

### D. Reach and Apply - The Camilleris and C & C Subaru (Counts III and IV)

GMAC is entitled to a summary judgment on its counts to reach and apply the assets and proceeds of C & C Subaru. To establish GMAC's case it need first establish that the defendants, the Camilleris, owe a debt. G.L. c. 214 §3 (6). GMAC can and does establish that the Camilleris owe the sum of $682,665.72 to GMAC. Secondly, GMAC must

7

establish that there is property in the hands of another, which is the property of the defendants. G.L. c. 214 § 3(7). The Camilleris admit that they are the sole and exclusive owners of all the stock of C & C Subaru.

Thus, for those very simple and logical reasons, GMAC is entitled to reach and apply the proceeds of C & C Subaru and the Camilleris to any and all debts of the Camilleris owed to GMAC. [2]

## IV.   Conclusion

For the reasons set out above, plaintiff seeks entry of judgment against defendants, Richard Camilleri and Thomas Camilleri, on Count II of its amended complaint in the amount of $682,665.72, together with interest, expenses and attorneys' fees. In addition, GMAC seeks an entry of judgment on Counts III and IV of its amended complaint and for an equitable order that GMAC may reach and apply and proceeds received by C & C Subaru and Richard Camilleri and Thomas Camilleri for the purpose of satisfying the debts owed to GMAC.

Respectfully submitted,
GENERAL MOTORS ACCEPTANCE
CORPORATION, Plaintiff
By its attorneys,

Paul Marshall Harris, BBO# 223500
Gadsby Hannah LLP
225 Franklin Street
Boston, MA 02110
(617) 345-7042

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above document was served upon (each party appearing pro se and) the attorney of record for each (other) party by mail (by hand) on  9/26/01

Dated: September 25, 2001

---

[2] This issue may presently seem moot as the banks were able to establish that they had a priority interest in the proceeds of the sale of C & C Subaru. The issue is not moot however, because C & C Subaru has filed suit in the Federal District Court in New Hampshire seeking damages for wrongdoings against the Camilleris and C & C Subaru by Subaru of New England, Inc. a distributor of Subaru motor vehicles. Thus, if the Camilleris and/or C & C Subaru should prevail GMAC wants to be in a position to recover the judgment awarded the defendants.

# UNITED STATES DISTRICT COURT
## for the
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GENERAL MOTORS ACCEPTANCE CORPORATION,<br><br>Plaintiff<br><br>Vs.<br><br>CAMILLERI BROS. CHEVROLET OF HOLYOKE, INC., CAMILLERI BROS., INC. doing business under the firm name and style, C & C SUBARU, THOMAS CAMILLERI, RICHARD CAMILLERI INDIVIDUALLY, SOVEREIGN BANK, MASSACHUSETTS BUSINESS DEVELOPMENT CORPORATION AND THE BANK OF WESTERN MASSACHUSETTS<br>Defendants | CIVIL ACTION NO.<br>CA98-4012-NMG<br><br>AMENDED VERIFIED COMPLAINT |

## INTRODUCTION

This is an action to recover certain balances in excess of six hundred eighty-two thousand and no/100 dollars ($682,000.00) due from defendants, Camilleri Bros. Chevrolet of Holyoke, Inc. to plaintiff under certain loan arrangements. In addition, the plaintiff seeks to enforce the guaranty of the liabilities and obligations of Camilleri Bros. Chevrolet of Holyoke, Inc. to plaintiff entered into by the principals of said defendant, defendants Richard Camilleri and Thomas Camilleri, and to reach and apply the stock of Camilleri Bros., Inc. d/b/a C & C Subaru owned by defendants, Richard Camilleri and Thomas Camilleri.

{B0089397.DOC;1}

## JURISDICTION

Jurisdiction is based on diversity of citizenship and that the amount in controversy exceeds the sum of seventy-five thousand dollars, all in accordance with U.S.C. Title 28, §1332. The plaintiff is a corporation duly organized under the laws of the State of Delaware and all the defendants are citizens of the Commonwealth of Massachusetts.

## PARTIES

1.      Plaintiff is a corporation duly organized and existing under the laws of the State of Delaware, is duly qualified and registered to engage in business in the Commonwealth of Massachusetts and has a usual place of business in the Town of Westborough, County of Worcester, Commonwealth of Massachusetts.

2.      Defendant, Camilleri Bros. Chevrolet of Holyoke, Inc. ("Camilleri Bros. Chevrolet") is a corporation duly organized and existing under the laws of said Commonwealth with a usual place of business in the City of Holyoke, County of Hampden, Commonwealth of Massachusetts.

3.      Defendant, Camilleri Bros., is a corporation duly organized and existing under the laws of said Commonwealth with a usual place of business in the City of Holyoke, County of Hampden, Commonwealth of Massachusetts. Said corporation is engaged in business under the firm name and style C & C Subaru. Said defendant is hereinafter referred to in this complaint as C & C Subaru.

4.      Defendant, Richard Camilleri, is a resident of the Town of Westfield, County of Hampshire, Commonwealth of Massachusetts. Said Richard Camilleri is one of several persons who are in direct control of the inventory of Camilleri Bros. Chevrolet and at all

times pertinent hereto, was and is the Treasurer of Camilleri Bros. Chevrolet.   Richard

Camilleri is a fifty percent stockholder in C & C Subaru and its Treasurer.

5.   Defendant, Thomas Camilleri, is a resident of the Town of Southampton, County of

Hampshire, Commonwealth of Massachusetts.   Said Thomas Camilleri is one of several

persons who are in direct control of the inventory of Camilleri Bros. Chevrolet and at all

times pertinent hereto, was and is the President of Camilleri Bros. Chevrolet.   Thomas

Camilleri is a fifty percent stockholder in C & C Subaru and its President.

6.   Defendant, Sovereign Bank, ("Sovereign") is a federal savings bank with a place of

business at 50 Rowes Wharf, Suite 430, Boston, Massachusetts.

7.   Defendant, Massachusetts Business Development Corporation ("MBDC") is a duly

organized corporation, authorized to do business in the Commonwealth of Massachusetts

and has an office at One Liberty Square, 2nd Floor, Boston, Massachusetts.

8.   Defendant, The Bank of Western Massachusetts ("Western Mass") is a duly organized

Massachusetts banking corporation, having an office at 29 State Street, Springfield,

Massachusetts.

FACTS

9.   Plaintiff is engaged in the business of extending credit and financial accommodations to

automobile dealers to enable them to acquire and maintain inventories of new and used

motor vehicles. Such extensions of credit are accomplished both by direct loans and

payment on behalf of the debtor to manufacturers and/or distributors of new motor vehicles

based on the price of new motor vehicles purchased by debtor on a secured deferred

payment basis as inventory.

6.  Plaintiff entered into financing arrangements with defendant, Camilleri Bros. Chevrolet on November 15, 1989. The arrangements were subsequently modified on August 18, 1995 and July 26, 1996. Defendant, Camilleri Bros. Chevrolet made, executed and delivered the following documents which evidence the liabilities and obligations of defendant, Camilleri Bros. Chevrolet and the security arrangements taken by plaintiff:

A.    Loan Agreement dated August 18, 1995, a copy of which is appended hereto, incorporated herein and is marked Exhibit A.

B.    Wholesale Security Agreements dated November 15, 1989, August 18, 1995 and July 26, 1996, copies of which are appended hereto, incorporated herein and are marked Exhibit B.

C.    Promissory Note in the principal amount of $2,000,000 dated August 18, 1995, a copy of which is appended hereto, incorporated herein and is marked Exhibit C.

8.    To induce the Plaintiff to enter into the above documents and extend floor plan financing in the amount of $2,000.000 the defendants Thomas Camilleri and Richard Camilleri signed guaranties whereby both Thomas Camilleri and Richard Camilleri unconditionally guaranteed all of the Camilleri Bros. Chevrolet obligations to the Plaintiff. Copies of such guaranties dated November 15, 1989 and August 23, 1995 are appended hereto, incorporated herein and are marked Exhibit D.

9.    As a consequence of the aforesaid agreements and undertakings, plaintiff held and, at all times pertinent to this action, holds a first and valid security interest in and to the collateral to secure any and all liabilities and obligations of defendant, Camilleri Bros. Chevrolet to plaintiff. The collateral includes but is not limited to:

" * * * new vehicles held for sale or lease and used vehicles acquired from manufacturers and distributors and held for sale and lease, and all vehicles of like kinds or types now owned or hereafter acquired from manufacturers, distributors and sellers by way

of replacement, substitution, addition or otherwise, and all additions and accessions thereto and all proceeds of such vehicles, including insurance proceeds * * * . [1]

10.     On June 18, 1998, the plaintiff counted and inventoried the new and used car inventories of defendant, Camilleri Bros. Chevrolet.  On that date, the inventory at the Camilleri Bros. Chevrolet consisted of 77 vehicles with an aggregate secured balance of $1,075,331.20.

11.     On June 26, 1998, only eight days after the June 18, 1998, inventory, the defendant, Camilleri Bros. Chevrolet, closed its business and by various sales sold thirty-eight (38) new cars subject to the security interest held by plaintiff.  In the normal course of the business of defendant, Camilleri Bros. Chevrolet, sold on average fourteen (14) new motor vehicles per month.

12.     Defendants, Camilleri Bros. Chevrolet, Thomas Camilleri and Richard Camilleri, sold and otherwise converted the proceeds of thirty-six (36) new and used motor vehicles with an aggregate secured balance of $682,685.72.  Defendants, Camilleri Bros. Chevrolet, Thomas Camilleri and Richard Camilleri failed to make payment therefor in accordance with paragraphs 3 and 5 of the Loan Agreement.[2]  A schedule of the inventories held by defendant, Camilleri Bros. Chevrolet, prior to the conversion is appended hereto, incorporated herein, made apart of this complaint and is marked "Exhibit E."  A schedule of the vehicles which have been sold and otherwise converted by defendants, Camilleri Bros. Chevrolet and Thomas Camilleri and Richard Camilleri, is appended hereto, incorporated herein and is marked "Exhibit F."

13.     By reason of the aforesaid sales and conversions of collateral and the failure of defendant, Camilleri Bros. Chevrolet, Richard Camilleri and Thomas Camilleri, to make payment therefor in accordance with the requirements of the Loan Agreement, defendant,

---

[1]  Wholesale Security Agreement dated November 15, 1989 and August 18, 1995, Exhibit B.

[2]  The Loan Agreement dated August 18, 1995, Exhibit A.

Camilleri Bros. Chevrolet, Thomas Camilleri and Richard Camilleri, jointly and severally are in default under all liabilities and obligations to plaintiff.

14.    Defendants, Camilleri Bros. Chevrolet, Richard Camilleri and Thomas Camilleri, jointly and severally owe plaintiff the sum of $682,665.72 together with interest, expenses and the attorneys' fees and costs incurred by plaintiff as a consequence of such default and the institution and prosecution of this action. Plaintiff has made demand for payment which demand defendants, Camilleri Bros. Chevrolet, Richard Camilleri and Thomas Camilleri, have ignored and failed to honor.

15.    Plaintiff is entitled to the immediate payment of $682,665.72 from defendants, Camilleri Bros. Chevrolet, Richard Camilleri and Thomas Camilleri, together with interest, expenses and attorneys' fees, as a result of the wrongful conversion of such collateral.

16.    On information and belief, the defendants, Thomas Camilleri and Richard Camilleri, are the sole stockholders in C & C Subaru. Upon further information and belief, it is the immediate intent of the Thomas Camilleri and Richard Camilleri to sell or otherwise dispose of their stock and/or all the assets of C & C Subaru. On information and belief, the defendants, Thomas Camilleri and Richard Camilleri, have entered into a Letter of Intent or purchase and sale agreement with a third party to purchase the stock and/or assets of the C & C Subaru. Said defendants do not intend to apply the proceeds of such sale to their indebtedness hereunder. Additionally, on information and belief the defendants, Thomas Camilleri and Richard Camilleri are the owners of the real estate upon which the defendant Camilleri Bros. Chevrolet is situated. At a meeting with the legal counsel for Camilleri Bros. Chevrolet, the Area Branch Manager of plaintiff, Kevin McNally, was informed by legal counsel that defendants Thomas Camilleri and Richard Camilleri would be selling the real estate having a property address of 933-937 Main Street, Holyoke, Hampden County, Massachusetts. The legal counsel for the defendants Thomas Camilleri and Richard Camilleri stated that he doubted that there would be any monies for GMAC after the sale of

the real property as a result of valid liens and expenses incurred from the sale of the property at 933-937 Main Street.

17. As a result of a preliminary investigation, by Plaintiff, prior to the commencement of discovery, the following scenarios have been encountered:

A.    The defendant, Camilleri Bros. Chevrolet, sold one of the converted vehicles (vin # 151163) to its business manager's husband in January of 1998, without reporting the sale to the Plaintiff. The vehicle was on a contract with a bank but never titled. The vehicle was driven on demonstrator plates and apparently not registered until June 30, 1998.

B.    Said defendant sold one of the converted vehicles (vin # 260985) to Edward Heffernan, the brother of an ex-employee.

C.    The trade-in vehicle on a sale was located at defendant, C & C Subaru place of business. Plaintiff was never advised that the vehicle was not at Camilleri Bros. Chevrolet. Instead the defendant, Camilleri Bros. Chevrolet informed plaintiff that the title was missing.

D.    The trade-in vehicle on a vehicle sold but not paid for was being driven by the defendant, Richard Camilleri's, wife.

18.    Defendants, Camilleri Bros. Chevrolet, Richard Camilleri and Thomas Camilleri, failed to disclose or inform plaintiff, at any time, that they were going to cease operating Camilleri Bros. Chevrolet. Plaintiff was made aware of the closing of Camilleri Bros. Chevrolet through a third party after June 26, 1998.

19.    At meetings after June 26, 1998 between representatives of the plaintiff and the defendant, Camilleri Bros. Chevrolet as well as Richard Camilleri and Thomas Camilleri, the defendants had denied the plaintiff access to their business records, all in direct violation of the Loan Agreement dated August 18, 1995 (Paragraph 3) and the wholesale securing Agreements dated November 15, 1989 and August 18, 1995.

20.    When preliminarily questioned about the whereabouts of various records the defendants, Camilleri Bros. Chevrolet, through their representatives as well as Richard Camilleri and Thomas Camilleri stated that the records existed on the defendant, Camilleri Bros. Chevrolet's, computer and that the computers are no longer operating and functional. In addition, the defendants, Camilleri Bros. Chevrolet, Richard Camilleri and Thomas Camilleri, have stated that all bank records are no longer on the premises and are not available for examination.    The defendants, Camilleri Bros. Chevrolet, Richard Camilleri and Thomas Camilleri, have failed and/or refused to cooperate with the plaintiff and provide the full books and records of Camilleri Bros. Chevrolet to it for examination.

21.    Within an eight (8) day period, June 19, 1998 to June 26, 1998, the defendants, Camilleri Bros. Chevrolet, Richard Camilleri and Thomas Camilleri had sold more than $700,000 of plaintiff's collateral which the defendants, Camilleri Bros. Chevrolet, Richard Camilleri and Thomas Camilleri, have failed and refused to account for.

22.    Defendant, Thomas Camilleri, is the dealer of record for Camilleri Bros. Chevrolet. Despite being the dealer of record, he refused to attend meetings with the plaintiff's representatives and refused to assist the plaintiff in determining the whereabouts of the collateral or the proceeds of the collateral.

23.    Plaintiff is entitled to the immediate possession of all remaining collateral. At the time of the filing of the original complaint in this matter, Defendant, Camilleri Bros. Chevrolet continued to engage in depleting the collateral by selling and disposing of new vehicles, used vehicles, parts and accessories as well as utilizing the fixed assets subject to the security interest held by plaintiff.

24.    Plaintiff demanded that defendants, Camilleri Bros. Chevrolet, Thomas Camilleri and Richard Camilleri, surrender the collateral.   Defendants, Camilleri Bros. Chevrolet, Thomas Camilleri and Richard Camilleri  have wholly failed and neglected to do so. Accordingly, plaintiff does not have an adequate remedy at law and knows of no liability

insurance in place to insure the loss caused as a result of the wrongful actions of defendants, Camilleri Bros. Chevrolet, Richard Camilleri and Thomas Camilleri.

25.     On information and belief, upon investigation and upon information obtained from the affidavit of Marion Camilleri on behalf of defendants, defendant, Camilleri Bros. Chevrolet did fraudulently convey and transfer proceeds for which plaintiff has a good and valid, first priority security interest to the proceeds transferred to defendant, C & C Subaru.

26.     The proceeds were fraudulently transferred to C & C Subaru by Camilleri Bros. Chevrolet with the actual intent on the part of defendants, Camilleri Bros. Chevrolet, Richard Camilleri, Thomas Camilleri and C & C Subaru to hinder, delay or defraud, GMAC. In addition, Camilleri Bros. Chevrolet conveyed the proceeds, for which GMAC had a perfected first security interest, to C & C Subaru without receiving a reasonably equivalent value in exchange for the transfer or without receiving fair and adequate consideration.

27.     The transfer of the proceeds of GMAC, in which it had a first priority, valid security interest to C & C Subaru, was done by Camilleri Bros. Chevrolet, Richard Camilleri and Thomas Camilleri with the intent of rendering Camilleri Bros. Chevrolet, insolvent.

28.     The defendants, Camilleri Bros. Chevrolet, Richard Camilleri and Thomas Camilleri, knew or should have known that by transferring the funds which were the proceeds of GMAC's security interest that they were rendering the defendant, Camilleri Bros. Chevrolet, insolvent and incapable of paying its obligations to its creditors, including but not limited to GMAC.

29.     Particular examples of the fraudulent transfers were:

   A.   Numerous checks amounts were written from the accounts of Camilleri Bros. Chevrolet, payable to C & C Subaru.  The sums are in excess of $500,000.00 in any given of the past two to three years, in which Camilleri Bros. Chevrolet had been in operation.  Yet, no documentation has been provided to date that supports

the defendant, C & C Subaru and Camilleri Bros. Chevrolet's statements, that the monies paid to C & C Subaru were for good and valid consideration;

B. There are checks paid to C & C Subaru, drawn on the accounts of Camilleri Bros. Chevrolet for the payment of auto body work performed. Yet, to date the defendants, C & C Subaru and Camilleri Bros. Chevrolet have failed to provide documentation that adequately supports any consideration for the payment of the monies. Furthermore, it is commonly known in the automobile industry, that the auto body repair department of a dealership is a place where income and expenses can be fairly well concealed or improperly reported, if one so desires because of the ability to "reduce" or "increase" paperwork;

C. It is a requirement of General Motors Corporation, that the dealer (Camilleri Bros. Chevrolet) keep separate independent books and records, running its dealership business autonomously and not mingle its records with other, independent dealership operations. Plaintiff, GMAC relied upon the books and records of defendant, Camilleri Bros. Chevrolet to be able to have good and reliable information on the financial health and condition of the defendant, Camilleri Bros. Chevrolet. The books and records of Camilleri Bros. Chevrolet were relied upon by GMAC in providing its floor plan funding to Camilleri Bros. Chevrolet. At no time did the defendant, Camilleri Bros. Chevrolet ever disclose to GMAC that it was paying over monies to C & C Subaru for the purpose of having C & C Subaru pay the various related expenses of Camilleri Bros. Chevrolet.

D. Upon information and belief, Subaru of America (The manufacturer of Subaru product in the United States) and Subaru of New England (the distributor of Subaru product in Massachusetts) have a similar requirement, that the books and records of Subaru are to be kept independent of any other dealership entity and not commingled with other dealership entities.

## COUNT I
### (Breach Of Contract-Camilleri Bros. Chevrolet)

30.    Plaintiff repeats the allegations contained in paragraphs 1 – 29 of this complaint as if alleged herein and makes them a part of this Count I.

31.    By reason of the aforesaid sales and conversion of collateral and the failure of defendant, Camilleri Bros. Chevrolet to make payment therefor in accordance with the requirements of the Loan Agreement, the Promissory Note, the Wholesale Security Agreements and amendments thereto,   defendant, Camilleri Bros. Chevrolet is in default under all liabilities and obligations to plaintiff.

32.    Defendant, Camilleri Bros. Chevrolet owes the plaintiff the sum of six hundred eighty-two thousand six hundred eighty-five and 72/100 ($682,685.72) dollars, together with interest, expenses and the attorneys fees and costs incurred by plaintiff as a consequence of such default and the institution and prosecution of this action.  Plaintiff has made demand for payment which demand defendant has ignored and failed to honor.

## COUNT II
### (Guaranty Of Richard Camilleri And Thomas Camilleri)

33.    Plaintiff repeats the allegations contained in paragraphs 1 – 32 of this complaint as if alleged herein and makes them a part of this Count II.

34.    Richard Camilleri and Thomas Camilleri, as the guarantors of Camilleri Bros. Chevrolet's obligations to plaintiff, owe plaintiff the sum of six hundred eighty-two thousand six hundred eighty-five and 72/100 ($682,685.72) dollars, together with interest, expenses and the attorneys fees and costs incurred by plaintiff as a consequence of such default and the institution and prosecution of this action.

## COUNT III
### (Reach And Apply Against Richard Camilleri And Thomas Camilleri)

35.    Plaintiff repeats the allegations contained in paragraphs 1 – 34 of this complaint as if alleged herein and makes them a part of this Count III.

36.    Defendants. Richard Camilleri and Thomas Camilleri are indebted to plaintiff in the amount of the sum of six hundred eighty-two thousand six hundred eighty-five and 72/100 ($682,685.72) dollars, together with interest, expenses and the attorneys fees and costs incurred by plaintiff as a consequence of such default and the institution and prosecution of this action.

37.    Upon information and belief, Richard Camilleri and Thomas Camilleri own all shares of the stock of C & C Subaru issued and outstanding.  On information and belief, Richard Camilleri and Thomas Camilleri do not intend to apply the proceeds of the sale of the stock and/or assets of C & C Subaru to the satisfaction of their indebtedness owed to the plaintiff as guarantors of the debts and obligations of Camilleri Bros. Chevrolet.

38.    Pursuant to G.L. c.214, §3, plaintiff is entitled to reach and apply the beneficial interest of both Richard Camilleri and Thomas Camilleri in the stock of C & C Subaru to satisfy in whole or in part any judgment rendered herein.

## COUNT IV
### (Reach And Apply Against C & C Subaru)

39.    Plaintiff repeats the allegations contained in paragraphs 1 – 38 of this complaint as if alleged herein and makes them a part of this Count IV.

40.    Defendants, Richard Camilleri and Thomas Camilleri are indebted to plaintiff in the amount of the sum of six hundred eighty-two thousand six hundred eighty-five and 72/100 ($682,685.72) dollars, together with interest, expenses and the attorneys fees and costs

incurred by plaintiff as a consequence of such default and the institution and prosecution of this action.

41.     Upon information and belief, at all relevant times, Richard Camilleri and Thomas Camilleri owned all shares of the stock of C & C Subaru issued and outstanding.   On information and belief, Richard Camilleri and Thomas Camilleri do not intend to apply the proceeds of the sale of the stock and/or assets of C & C Subaru to the satisfaction of their indebtedness owed to the plaintiff as guarantors of the debts and obligations of Camilleri Bros. Chevrolet.   Pursuant to G.L. c.214, §3, plaintiff is entitled to reach and apply the proceeds received from the sale of C & C Subaru to satisfy in whole or in part any judgment rendered herein.

COUNT V
Fraudulent Transfer G.L. c. 109A - Camilleri Bros. Chevrolet

42.     Plaintiff repeats the allegations contained in paragraphs 1 – 41 of this complaint as if alleged herein and makes them a part of this Count V.

43.     Defendant, Camilleri Bros. Chevrolet did fraudulently convey and transfer proceeds, for which plaintiff has a good and valid, first priority security interest to defendant, C & C Subaru's for the purpose of defrauding plaintiff and hindering and delaying the collection of the indebtedness evidenced by the loan documentation attached to this complaint as Exhibits A - D and made a part of this Count V.

COUNT VI
Fraudulent Transfer G.L. c. 109A - C & C Subaru

44.     Plaintiff repeats the allegations contained in paragraphs 1 – 43 of this complaint as if alleged herein and makes them a part of this Count VI.

45.     Defendant, Camilleri Bros. Chevrolet did fraudulently convey and transfer proceeds for which plaintiff has a good and valid, first priority security interest to defendant, C & C Subaru for the purpose of defrauding plaintiff and hindering and delaying the collection of the indebtedness evidenced by the loan documentation attached to this complaint as Exhibits A - D and made a part of this Count VI.

COUNT VII
Fraudulent Transfer G.L. c. 109A - Richard Camilleri

46.     Plaintiff repeats the allegations contained in paragraphs 1 – 46 of this complaint as if alleged herein and makes them a part of this Count VII.

47.     Defendant, Richard Camilleri as a stockholder, officer and director of defendant Camilleri Bros. Chevrolet, did fraudulently convey and transfer proceeds for which plaintiff has a good and valid, first priority security interest, to defendant, C & C Subaru, of which he is a stockholder, officer and director, for the purpose of defrauding plaintiff and hindering and delaying the collection of the indebtedness evidenced by the loan documentation attached to this complaint as Exhibits A - D and made a part of this Count VII.

COUNT IIX
Fraudulent Transfer G.L. c. 109A - Thomas Camilleri

48.     Plaintiff repeats the allegations contained in paragraphs 1 – 47 of this complaint as if alleged herein and makes them a part of this Count IIX.

49.     Defendant, Thomas Camilleri as a stockholder, officer and director of defendant Camilleri Bros. Chevrolet, did fraudulently convey and transfer proceeds for which plaintiff has a good and valid, first priority security interest, to defendant, C & C Subaru, of which he is a stockholder, officer and director, for the purpose of defrauding plaintiff and hindering

and delaying the collection of the indebtedness evidenced by the loan documentation attached to this complaint as Exhibits A - D and made a part of this Count IIX.

## COUNT IX
### Fraudulent Transfer G.L. c. 109A - Sovereign

50.     Plaintiff repeats the allegations contained in paragraphs 1 – 49 of this complaint as if alleged herein and makes them a part of this Count IX.

51.     Defendant Camilleri Bros. Chevrolet, did fraudulently convey and transfer proceeds for which plaintiff has a good and valid, first priority security interest, to defendant, C & C Subaru, of which he is a stockholder, officer and director, for the purpose of defrauding plaintiff and hindering and delaying the collection of the indebtedness evidenced by the loan documentation attached to this complaint as Exhibits A - D and made a part of this Count IX.

52.     Defendant, C & C Subaru now desires to convey those same assets, in which GMAC has a valid first security interest to defendant Sovereign.

## COUNT X
### Fraudulent Transfer G.L. c. 109A - MBDC

53.     Plaintiff repeats the allegations contained in paragraphs 1 – 52 of this complaint as if alleged herein and makes them a part of this Count X.

54.     Defendant Camilleri Bros. Chevrolet, did fraudulently convey and transfer proceeds for which plaintiff has a good and valid, first priority security interest, to defendant, C & C Subaru, of which he is a stockholder, officer and director, for the purpose of defrauding plaintiff and hindering and delaying the collection of the indebtedness evidenced by the loan documentation attached to this complaint as Exhibits A - D and made a part of this Count X.

55.     Defendant, C & C Subaru now desires to convey those same assets, in which GMAC

has a valid first security interest to defendant MBDC.

COUNT XI
Fraudulent Transfer G.L. c. 109A - Western Mass

56.     Plaintiff repeats the allegations contained in paragraphs 1 – 55 of this complaint as if

alleged herein and makes them a part of this Count XI.

57.     Defendant Camilleri Bros. Chevrolet, did fraudulently convey and transfer proceeds

for which plaintiff has a good and valid, first priority security interest to defendant, C & C

Subaru, of which he is a stockholder, officer and director, for the purpose of defrauding

plaintiff and hindering and delaying the collection of the indebtedness evidenced by the loan

documentation attached to this complaint as Exhibits A - D and made a part of this Count

XI.

58.     Defendant, C & C Subaru now desires to convey those same assets, in which GMAC

has a valid first security interest to defendant, Western Mass.

**WHEREFORE**, plaintiff prays:

AS TO ALL COUNTS:

A.     That until further order of Court, defendant, Camilleri Bros. Chevrolet, its officers, directors, agents, servants and employees and all persons acting on its behalf with knowledge of this order, be enjoined and restrained from selling, leasing or otherwise disposing of the collateral subject to the security agreements declared upon;

B.     That until further order of Court the defendant, Camilleri Bros. Chevrolet, its agents, servants and employees and all persons acting on its behalf with knowledge of this order, be enjoined and restrained from mortgaging, pledging, creating a security interest in or otherwise hypothecating the collateral subject to the security interests declared upon;

C.     That the right of the plaintiff to the immediate possession of the collateral subject to the security agreements declared upon, be established and that

the defendant, Camilleri Bros. Chevrolet, be ordered and directed to surrender the same to plaintiff;

D.     That the Defendants, Thomas Camilleri and Richard Camilleri and the defendant, Camilleri Bros., Inc. d/b/a C & C Subaru as well as their agents, servants and employees and all persons acting on their behalf with knowledge of this order, be enjoined and restrained from assigning, selling, transferring, leasing or otherwise disposing of, mortgaging, creating a security interest in, pledging or otherwise hypothecating any stock interest in Camilleri Bros., Inc. d/b/a C & C Subaru held by the defendants Thomas Camilleri, Richard Camilleri and Camilleri Bros., Inc. d/b/a; C & c Subaru from selling, assigning and/or otherwise transferring assets of Camilleri Bros., Inc. d/b/a C & C Subaru  as set forth in an Asset Acquisition Agreement entered into by the Defendant Camilleri Bros., Inc. d/b/a/ C & C Subaru and Bernard F. Curry, III or his nominee and any amendments there to and all proceeds of the sale in the Asset and Acquisition  Agreement dated August 21, 19998 by and between C & C Subaru and Curry and any amendments thereto shall be held in escrow in an interest bearing account by Frank P. Fitzgerald until further order of this Court.

E.     That until further order of the Court, defendant, C & C Subaru, its officers, directors, agents, servants and employees and all persons acting on its behalf with knowledge of this order be enjoined and restrained from selling, mortgaging, pledging, creating a security interest in or otherwise hypothecating or from transferring any shares of its capital stock standing in the names of Richard Camilleri or Thomas Camilleri, or held beneficially by them, on its books and records.

F.     That until further order of the Court, that any proceeds of the sale, except the payoff of valid mortgage liens and legitimate costs of the sale of 933-937 be attached and placed in an interest bearing, joint escrow account with the parties' legal counsel.

As to Counts I and II: (Breach of Contract-Camilleri Bros. Chevrolet and Guaranty of Richard Camilleri and Thomas Camilleri)

G.     That the indebtedness of defendants, Camilleri Bros. Chevrolet, Richard Camilleri and Thomas Camilleri to plaintiff be established and that judgment enter thereon in favor of plaintiff;

As to Count III: (Reach and Apply Against Richard Camilleri and Thomas Camilleri)

H.     The interest of Thomas Camilleri and Richard Camilleri in and to C & C Subaru be established;

I.    Plaintiff be permitted to reach and apply the interests and proceeds of C & C Subaru to their indebtedness owed to the plaintiff.

As to Count IV: (Reach and Apply Against C & C Subaru)

J.    The interest of Thomas Camilleri and Richard Camilleri in and to C & C Subaru be established;

K.    Plaintiff be permitted to reach and apply the interests and proceeds of C & C Subaru to their indebtedness owed to the plaintiff.

As to Count V; (Fraudulent Transfer - Camilleri Bros. Chevrolet)

L.    That plaintiff have judgment against defendant, Camilleri Bros. Chevrolet, Richard Camilleri and Thomas Camilleri for the amount established and owed to plaintiff, together with interests and costs;

M.    That this Court determine the amount of monies fraudulently conveyed in accordance with G.L. c. 109A be determined; and

N.    That this Court determine that the monies fraudulently conveyed to C & C Subaru be declared void and that those monies be turned over to the plaintiff.

As to Count VI; (Fraudulent Transfer - C & C Subaru)

O.    That plaintiff have judgment against defendant, Camilleri Bros. Chevrolet, Richard Camilleri and Thomas Camilleri for the amount established and owed to plaintiff, together with interests and costs;

P.    That this Court determine the amount of monies fraudulently conveyed in accordance with G.L. c. 109A be determined; and

Q.    That this Court determine that the monies fraudulently conveyed to C & C Subaru be declared void and that those monies be turned over to the plaintiff.

As to Count VII; (Fraudulent Transfer - Richard Camilleri)

R.    That plaintiff have judgment against defendant, Camilleri Bros. Chevrolet, Richard Camilleri and Thomas Camilleri for the amount established and owed to plaintiff, together with interests and costs;

S.    That this Court determine the amount of monies fraudulently conveyed in accordance with G.L. c. 109A be determined; and

T.  That this Court determine that the monies fraudulently conveyed to C & C Subaru be declared void and that those monies be turned over to the plaintiff.

As to Count IIX; (Fraudulent Transfer - Thomas Camilleri)

U.  That plaintiff have judgment against defendant, Camilleri Bros. Chevrolet, Richard Camilleri and Thomas Camilleri for the amount established and owed to plaintiff, together with interests and costs;

V.  That this Court determine the amount of monies fraudulently conveyed in accordance with G.L. c. 109A be determined; and

W.  That this Court determine that the monies fraudulently conveyed to C & C Subaru be declared void and that those monies be turned over to the plaintiff.

As to Count IX; (Fraudulent Transfer - Sovereign)

X.  That plaintiff have judgment against defendant, Camilleri Bros. Chevrolet, Richard Camilleri and Thomas Camilleri for the amount established and owed to plaintiff, together with interests and costs;

Y.  That this Court determine the amount of monies fraudulently conveyed in accordance with G.L. c. 109A be determined; and

Z.  That this Court determine that the monies fraudulently conveyed to C & C Subaru be declared void and that those monies be turned over to the plaintiff.

As to Count X; ((Fraudulent Transfer - MBDC)

AA.  That plaintiff have judgment against defendant, Camilleri Bros. Chevrolet, Richard Camilleri and Thomas Camilleri for the amount established and owed to plaintiff, together with interests and costs;

BB.  That this Court determine the amount of monies fraudulently conveyed in accordance with G.L. c. 109A be determined; and

CC.  That this Court determine that the monies fraudulently conveyed to C & C Subaru be declared void and that those monies be turned over to the plaintiff and further order that Sovereign has no lien on those funds determined to be fraudulently conveyed over to C & C Subaru.

As to Count XI; (Fraudulent Transfer - MBDC)

DD.   That plaintiff have judgment against defendant, Camilleri Bros. Chevrolet, Richard Camilleri and Thomas Camilleri for the amount established and owed to plaintiff, together with interests and costs;

EE.   That this Court determine the amount of monies fraudulently conveyed in accordance with G.L. c. 109A be determined; and

FF.   That this Court determine that the monies fraudulently conveyed to C & C Subaru be declared void and that those monies be turned over to the plaintiff and further order that MBDC has no lien on those funds determined to be fraudulently conveyed over to C & C Subaru.

### As to Count XI; (Fraudulent Transfer - Western Mass)

GG.   That plaintiff have judgment against defendant, Camilleri Bros. Chevrolet, Richard Camilleri and Thomas Camilleri for the amount established and owed to plaintiff, together with interests and costs;

HH.   That this Court determine the amount of monies fraudulently conveyed in accordance with G.L. c. 109A be determined; and

II.   That this Court determine that the monies fraudulently conveyed to C & C Subaru be declared void and that those monies be turned over to the plaintiff and further order that Western Mass has no lien on those funds determined to be fraudulently conveyed over to C & C Subaru.

### As to All Counts:

JJ.   That plaintiff be awarded its legal costs, including attorneys' fees as provided in the agreements declared upon, and the costs incurred by it in protecting and taking possession of the collateral; and

KK.   For such other and further relief as may deem meet and proper under the circumstances.

GENERAL   MOTORS   ACCEPTANCE CORPORATION, Plaintiff
By its attorneys,

Paul Marshall Harris, BBO# 223500
Gadsby & Hannah LLP
225 Franklin Street
Boston, MA 02110
Dated: July 2, 1999                    (617) 345-7042

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document was served upon (each party appeari. pro se and) the attorney of record for each (oth party by mail (by hand) on 7/7/99

{B0089397.DOC;1}                    20

VERIFICATION OF COMPLAINT U.S. DISTRICT COURT
DISTRICT OF MASS

I, James DeGrazia, Operations Manager of General Motors Acceptance Corporation, plaintiff in the above matter, have read the foregoing complaint and verify that the allegations contained in it are true except those made on information and belief, and as to those, I believe them to be true.

FILED
OFFICE

_James DeGrazia_

**COMMONWEALTH OF MASSACHUSETTS**

July 2, 1999

Personally appeared James DeGrazia, Operations Manager aforesaid, and acknowledged that the allegations contained in the foregoing complaint are true except those made on information and belief, and as to those, he believes them to be true.

Before me.

_Karyn M. Kuszewski_
Notary Public

KARYN M. KUSZEWSKI
Notary Public
Commonwealth of Massachusetts
My Commission Expires
Sept. 9, 2005



## LOAN AGREEMENT

Camilleri Bros. Chevrolet of Holyoke, Inc.
_____
(Dealer)

| 933-937 | Main Street | Holyoke | Hampden | Massachusetts |
|---|---|---|---|---|
| No. | Street | City | County | State |

(hereinafter called the "Debtor") having made application for a line of credit from General Motors Acceptance Corporation, (hereinafter called the "Secured Party"), with an office at 1700 West Park Drive, Westboro, Massachusetts 01581 , which line of credit is to be evidenced by a demand promissory note secured as provided herein, and said application, having been duly considered and approved by the Secured Party at its said office.

NOW THEREFORE, in consideration of the mutual promises herein contained, it is agreed:

1. The Secured Party hereby extends to the Debtor a line of credit in the amount of Two Million——————————Dollars ($ 2,000,000.00 upon the terms and conditions hereinafter set forth.

2. The Debtor has delivered to the Secured Party a demand promissory note of even date herewith in the amount set forth in paragraph 1 above, which demand promissory note shall bear interest on each advance hereunder from the date of each such advance to the date of the repayment thereof, at the rate designated in security agreements or mortgages executed by the Debtor prior to and subsequent to the date of this Loan Agreement. The Debtor shall repay to the Secured Party the amount of each such advance, plus interest as aforesaid, as provided in said security agreements or mortgages, it being understood and agreed that any provision for instalments therein shall not in any manner modify the demand promissory note referred to herein. In no event will the interest rate applied to any advance hereunder exceed the highest contract rate permitted by law at the date of such advance.

3. The line of credit extended hereunder shall be used exclusively for the purposes of acquiring personal property to be placed in the Debtor's inventory or borrowing money on the security of personal property already held in the Debtor's inventory or borrowing money on the security of other property acquired by the Debtor for use in business. The Secured Party will advance funds in payment of said property so acquired or held in an amount not to exceed the aggregate amount of the line of credit set forth in paragraph one (1) above except insofar as provided under paragraph nine (9) of this Agreement. It is understood and agreed that the Secured Party may, at its option, terminate the line of credit and refuse to advance funds hereunder upon the occurrence of any of the following: a default by Debtor in the payment or performance of any obligation hereunder or under any other agreement entered into with Secured Party; the institution of a proceeding in bankruptcy, receivership or insolvency by or against Debtor or his property; an assignment by Debtor for the benefit of creditors; cancellation of Debtor's General Motors franchise; the filing of any notice of a tax lien against any of the Debtor's property; a misrepresentation by Debtor for the purpose of obtaining credit or an extension of credit; a refusal by Debtor, upon request by Secured Party, to furnish financial information to Secured Party at reasonable intervals or to permit Secured Party to examine Debtor's books or records; or if Debtor, without Secured Party's prior written consent, shall: (a) guarantee, endorse or otherwise become surety for or upon the obligations of others except as may be done in the ordinary course of Debtor's business; (b) transfer or otherwise dispose of any proprietary, partnership or share interest Debtor has in his business, or all or substantially all of the assets thereof; (c) enter into any merger or consolidation, if a corporation; (d) make any substantial or unusual disbursement or use of funds of Debtor's business, except as may be done in the ordinary course of Debtor's business.

4. As security for the advances made hereunder by the Secured Party, the Debtor hereby expressly grants to the Secured Party a security interest in such of the Debtor's inventory of personal property and in such other property acquired by the Debtor for use in business as are described in security agreements or mortgages executed by the Debtor prior to the date of this Agreement and pursuant to which security interests therein have been granted to the Secured Party, which security interests are hereby reaffirmed and, pursuant to supplemental security agreements or mortgages as may hereafter be executed by the Debtor, in such property as may hereafter be acquired by the Debtor.

The Debtor upon the request of the Secured Party will execute and deliver to the Secured Party from time to time such supplemental security agreements or mortgages together with further documents as requested by the Secured Party, which security agreements or mortgages (and further documents, if any) shall be in such form as the Secured Party may in its sole discretion require. Each such security agreement or mortgage shall describe each item of property which is subject thereto, with an assigned value on each such item of not less than the amount the Secured Party advances in respect of said item of property.

5. At the time the Debtor sells or otherwise disposes of inventory in respect of which the Secured Party has advanced funds pursuant to paragraph three (3) of this Agreement, the Debtor will forthwith pay over to the Secured Party the amount of money the Secured Party has advanced in respect to such personal property plus interest, less any previous payments made thereon.

6. In lieu of creation of new forms, the Secured Party may, in its sole discretion, continue to designate for use hereunder the identical form of security agreement (and other documents, if any) heretofore or hereafter in general use by the Secured Party, including any factory trust receipts. In the case of any conflict between any provision of such agreements and of this Agreement, it is agreed that the provisions of this Agreement shall control.

7. In the event that a form of promissory note be attached to any form of security agreement heretofore or hereafter executed or is referred to therein as having been executed on the same date or bearing the same identification number as such security agreement, such promissory note, if executed, shall be deemed to be mere evidence of the receipt of an advance under this Agreement and shall not be considered as evidence of the total obligation of the Dealer, which obligation shall only be evidenced by the promissory note referred to in Paragraph 2 hereof.

8. The amount owed by the Debtor to the Secured Party on the demand promissory note executed herewith and described in paragraph two (2) herein shall at any time be the total aggregate advances under paragraph three (3) hereof plus interest less all repayments thereof to the Secured Party by the Debtor.

9. If the line of credit granted hereunder is increased at any time, the Debtor will deliver to the Secured Party a demand promissory note in the amount of such increase, which demand promissory note shall also bear interest as provided in paragraph two (2) of this Agreement. If the line of credit is increased, all the provisions of this Agreement shall apply to the total line of credit.

10. All provisions of the GMAC Wholesale Plan (including the insurance requirements expressed therein) shall apply to all financing transacted hereunder, except insofar as any provision of such plan may be inconsistent with any provision of this Agreement, in which event the provision herein set forth shall control.

11. This Agreement shall be interpreted according to the laws of the United States and the State of Massachusetts and shall be binding upon and inure to the benefit of each of the parties hereto and their respective legal representatives, successors, and assigns.

12. If the amount owed by the Debtor to the Secured Party as a result of the total aggregate advances under Paragraph Three (3) is less than Twenty-Five Thousand Dollars ($25,000), the interest on such amount owed shall be calculated at a rate not to exceed the rate permitted by state law. If the amount owed by the Debtor to the Secured Party as a result of the total aggregate advances under Paragraph Three (3) is Twenty-Five Thousand Dollars ($25,000) or more, the interest on such amount owed shall be calculated at a rate not to exceed the higher of the rate permitted by state law or the rate permitted by Federal law. The parties recognize and agree that these laws may change from time to time.

IN WITNESS WHEREOF, each of the parties has caused this Agreement to be executed by its duly authorized representative this 18th day of August , 19 95

Camilleri Bros. Chevrolet
DEBTOR of Holyoke, Inc.                    By _____
                                                              (Title)



## WHOLESALE SECURITY AGREEMENT

**To:**   General Motors Acceptance Corporation (GMAC)

In the course of our business, we acquire new and used cars, trucks and chassis ("Vehicles") from manufacturers or distributors. We desire you to finance the acquisition of such vehicles and to pay the manufacturers or distributors therefor.

We agree upon demand to pay to GMAC the amount it advances or is obligated to advance to the manufacturer or distributor for each vehicle with interest at the rate per annum designated by GMAC from time to time and then in force under the GMAC Wholesale Plan.

We also agree that to secure collectively the payment by us of the amounts of all advances and obligations to advance made by GMAC to the manufacturer, distributor or other sellers, and the interest due thereon, GMAC is hereby granted a security interest in the vehicles and the proceeds of sale thereof ("Collateral") as more fully described herein.

The collateral subject to this Wholesale Security Agreement is new vehicles held for sale or lease and used vehicles acquired from manufacturers or distributors and held for sale or lease, and all vehicles of like kinds or types now owned or hereafter acquired from manufacturers, distributors or sellers by way of replacement, substitution, addition or otherwise, and all additions and accessions thereto and all proceeds of such vehicles, including insurance proceeds.

Our possession of the vehicles shall be for the purpose of storing and exhibiting same for retail sale in the regular course of business. We shall keep the vehicles brand new and we shall not use them illegally, improperly or for hire. GMAC shall at all times have the right of access to and inspection of the vehicles and the right to examine our books and records pertaining to the vehicles.

We agree to keep the vehicles free of all taxes, liens and encumbrances, and any sum of money that may be paid by GMAC in release or discharge thereof shall be paid to GMAC on demand as an additional part of the obligation secured hereunder. We shall not mortgage, pledge or loan the vehicles and shall not transfer or otherwise dispose of them except as next hereinafter more particularly provided. We shall execute in favor of GMAC any form of document which may be required for the amounts advanced to the manufacturer, distributor or seller, and shall execute such additional documents as GMAC may at any time request in order to confirm or perfect title or security in the vehicles. Execution by us of any instrument for the amount advanced shall be deemed evidence of our obligation and not payment therefor. We authorize GMAC or any of its officers or employes or agents to execute such documents in our behalf and to supply any omitted information and correct patent errors in any document executed by us.

We understand that we may sell and lease the vehicles at retail in the ordinary course of business. We further agree that as each 'e is sold, or leased, we will, faithfully and promptly remit to you the amount you advanced or have become obligated to advance on . behalf to the manufacturer, distributor or seller, with interest at the designated rate per annum then in effect under the GMAC Wholesale Plan. The GMAC Wholesale Plan is hereby incorporated by reference.

GMAC's security interest in the vehicles shall attach to the full extent provided or permitted by law to the proceeds, in whatever form, of any retail sale or lease thereof by us until such proceeds are accounted for as aforesaid, and to the proceeds of any other disposition of said vehicles or any part thereof.

In the event we default in payment under and according to this agreement, or in due performance or compliance with any of the terms and conditions hereof, or in the event of a proceeding in bankruptcy, insolvency or receivership instituted by or against us or our property, or in the event that GMAC deems itself insecure or said vehicles are in danger of misuse, loss, seizure or confiscation, GMAC may take immediate possession of said vehicles, without demand or further notice and without legal process; for the purpose and in furtherance thereof, we shall, if GMAC so requests, assemble said vehicles and make them available to GMAC at a reasonable convenient place designated by it, and GMAC shall have the right, and we hereby authorize and empower GMAC, to enter upon the premises wherever said vehicles may be and remove same. We shall pay all expenses and reimburse GMAC for any expenditures, including reasonable attorney's fees and legal expenses, in connection with GMAC's exercise of any of its rights and remedies under this agreement.

In the event of repossession of the vehicles by GMAC, then the rights and remedies applicable under the Uniform Commercial Code shall apply.

Any provision hereof prohibited by law shall be ineffective to the extent of such prohibition without invalidating the remaining provisions hereof.

IN WITNESS WHEREOF, each of the parties has caused this Agreement to be executed by its duly authorized representative this _____ 15th _____ day of _____ November _____ 19 89 .

Witness and Attest:

_____

**Accepted**

JERAL MOTORS ACCEPTANCE CORPORATION

By: _____ , asst Sac .
       Its Authorized Agent

1700 West Park Drive Westboro, MA 01581
       Address

Camilleri Bros. Chevrolet, Inc.
       Dealer's Name

By: _____

Its: _____

933-937 Main Street, Holyoke, MA 01040
       Address of Dealer

GMAC 178 4-86
PRINTED IN U.S.A.

## WHOLESALE SECURITY AGREEMENT

neral Motors Acceptance Corporation (GMAC)

In the course of our business, we acquire new and used cars, trucks and chassis ("Vehicles") from manufacturers or distributors. desire you to finance the acquisition of such vehicles and to pay the manufacturers or distributors therefor.

We agree upon demand to pay to GMAC the amount it advances or is obligated to advance to the manufacturer or distributor for each vehicle with interest at the rate per annum designated by GMAC from time to time and then in force under the GMAC Wholesale Plan.

We also agree that to secure collectively the payment by us of the amounts of all advances and obligations to advance made by GMAC to the manufacturer, distributor or other sellers, and the interest due thereon, GMAC is hereby granted a security interest in the vehicles and the proceeds of sale thereof ("Collateral") as more fully described herein.

The collateral subject to this Wholesale Security Agreement is new vehicles held for sale or lease and used vehicles acquired from manufacturers or distributors and held for sale or lease, and all vehicles of like kinds or types now owned or hereafter acquired from manufacturers, distributors or sellers by way of replacement, substitution, addition or otherwise, and all additions and accessions thereto and all proceeds of such vehicles, including insurance proceeds.

Our possession of the vehicles shall be for the purpose of storing and exhibiting same for retail sale in the regular course of business. We shall keep the vehicles brand new and we shall not use them illegally, improperly or for hire. GMAC shall at all times have the right of access to and inspection of the vehicles and the right to examine our books and records pertaining to the vehicles.

We agree to keep the vehicles free of all taxes, liens and encumbrances, and any sum of money that may be paid by GMAC in release or discharge thereof shall be paid to GMAC on demand as an additional part of the obligation secured hereunder. We shall not mortgage, pledge or loan the vehicles and shall not transfer or otherwise dispose of them except as next hereinafter more particularly provided. We shall execute in favor of GMAC any form of document which may be required for the amounts advanced to the manufacturer, distributor or seller, and shall execute such additional documents as GMAC may at any time request in order to confirm or perfect title or security in the vehicles. Execution by us of any instrument for the amount advanced shall be deemed evidence of our obligation and not payment therefor. We authorize GMAC or any of its officers or employes or agents to execute such documents in our behalf and to supply any omitted information and correct patent errors in any document executed by us.

We understand that we may sell and lease the vehicles at retail in the ordinary course of business. We further agree that as each vehicle is sold, or leased, we will, faithfully and promptly remit to you the amount you advanced or have become obligated to advance on our behalf to the manufacturer, distributor or seller, with interest at the designated rate per annum then in effect under the GMAC e Plan. The GMAC Wholesale Plan is hereby incorporated by reference.

GMAC's security interest in the vehicles shall attach to the full extent provided or permitted by law to the proceeds, in whatever rm, of any retail sale or lease thereof by us until such proceeds are accounted for as aforesaid, and to the proceeds of any other disposition of said vehicles or any part thereof.

In the event we default in payment under and according to this agreement, or in due performance or compliance with any of the terms and conditions hereof, or in the event of a proceeding in bankruptcy, insolvency or receivership instituted by or against us or our property, or in the event that GMAC deems itself insecure or said vehicles are in danger of misuse, loss, seizure or confiscation, GMAC may take immediate possession of said vehicles, without demand or further notice and without legal process; for the purpose and in furtherance thereof, we shall, if GMAC so requests, assemble said vehicles and make them available to GMAC at a reasonable convenient place designated by it, and GMAC shall have the right, and we hereby authorize and empower GMAC, to enter upon the premises wherever said vehicles may be and remove same. We shall pay all expenses and reimburse GMAC for any expenditures, including reasonable attorney's fees and legal expenses, in connection with GMAC's exercise of any of its rights and remedies under this agreement.

In the event of repossession of the vehicles by GMAC, then the rights and remedies applicable under the Uniform Commercial Code shall apply.

Any provision hereof prohibited by law shall be ineffective to the extent of such prohibition without invalidating the remaining provisions hereof.

IN WITNESS WHEREOF, each of the parties has caused this Agreement to be executed by its duly authorized representative this
_____18th_____ day of ___August___ 19_95_.

Witness and Attest:                                          Camilleri Bros. Chevrolet
                                                            of Holyoke, Inc.
_____                                     _____
                                                                    Dealer's Name
Accepted                                                    By_____

GENERAL MOTORS ACCEPTANCE CORPORATION                       Its:_____

_____  _____                          933-937 Main Street, Holyoke, MA 01040
     Its Authorized Agent                                          Address of Dealer

1700 West Park Drive, Westboro, MA  01581
                 Address

GMAC 178
Prd. in U.S.A. 50M 4-91

## Amendment to Wholesale Security Agreement

This agreement, effective the date set forth below, amends the Wholesale Security Agreement dated _____November 20____, 19_89_, executed by and between the undersigned dealer ("Dealer") and General Motors Acceptance Corporation ("GMAC"), and any other amendment thereto (the "Wholesale Security Agreement").

### RECITALS

Whereas, pursuant to the terms and conditions of the Wholesale Security Agreement, GMAC has agreed to finance the purchase of new and used vehicles which the Dealer acquires from manufacturers and distributors; and

Whereas, from time to time Dealer acquires new and used vehicles from other sellers, including, without limitation, auctioneers, dealers, merchants, customers, brokers, leasing and rental companies, and other suppliers (the "Sellers") which vehicles Dealer desires GMAC to finance (the "Other Vehicles").

Whereas, GMAC is willing to finance Dealer's acquisition of the "Other Vehicles", pursuant to the terms and conditions of the Wholesale Security Agreement and this amendment thereto.

### AGREEMENT

Now THEREFORE, in consideration of the premises, Dealer and GMAC agree as follows:

1) The Wholesale Security Agreement is hereby amended so that the word "vehicles" as used throughout the Wholesale Security Agreement, shall -- in addition to the description contained therein -- mean and include all Other Vehicles which GMAC elects to finance for Dealer from time to time (the "Other Vehicle Advances").

2) Upon request from GMAC, Dealer shall provide it with satisfactory evidence of the identity, ownership, value, source, status, and other information concerning the Other Vehicles in connection with Other Vehicle Advances, including completion of the GMAC Floor Plan Advice Form (GMAC 178-1).

3) GMAC may deliver the proceeds from Other Vehicle Advances directly to Dealer or Sellers.

4) For all intents and purposed, the Wholesale Security Agreement remains in full force and effect, including, without limitation, that

a) Dealer agrees upon demand to pay to GMAC the amount it advances or is obligated to advance for each of the Other Vehicles at a rate of interest per annum designated by GMAC from time to time and then in force; and

b) Any and all credit lines provided by GMAC to Dealer are expressly subject to the written terms of the Wholesale Security Agreement, including this amendment, and are discretionary in that they may be modified, suspended or terminated at GMAC's election; and

c) To further secure all of the obligations which Dealer now or hereafter owes to GMAC pursuant to the Wholesale Security Agreement, Dealer grants to GMAC a security interest in each of the Other Vehicles now owned or hereafter acquired by Dealer, and any and all additions, replacements, substitutions and accessions pertaining thereto, and the proceeds thereof.

IN WITNESS WHEREOF, GMAC and Dealer have caused this agreement to be executed and delivered by its duly authorized representatives effective the __26th__ day of __July_, 19_96_.

General Motors Acceptance Corporation

By _____

_____
Asst Sec

Camilleri Bros. Chevrolet of Holyoke, Inc.
(Dealer's Name)

By _____

Its _____

GMAC Form W-17LA (5/96)



## PROMISSORY NOTE

<u>Holyoke</u>                    , <u>Massachusetts</u> , <u>8-18-95</u>
 (City)                          (State)            (Date)

**ON DEMAND,** for value received, the undersigned promise(s) to pay to the order of *GENERAL MOTORS ACCEPTANCE CORPORATION,* at its office at <u>1700 West Park Drive, Westboro, Massachusetts</u> the sum of <u>Two Million————————————————————————</u>00/100 Dollars ($<u>2,000,000.00————</u>) with interest thereon as specified in paragraph two (2) of the Loan Agreement dated <u>AUGUST 18, 1995</u>.

In the event this note is placed in the hands of an attorney for collection, each maker and endorser hereof agrees to pay all costs, charges and expenses of such collection, including a reasonable attorney's fee and also waive(s) presentment, protest, and notice of dishonor.

_____
(Witness)

_____
(Witness)

Camilleri Bros. Chevrolet of Holyoke, Inc.
(Dealer or Dealer's Subsidiary)

By _____
(Owner or Partner, or Name and Title of Corporation Officer)

GMAC 176-G.P.N. 1-93





01-10081 ALL

# GUARANTY

City __Holyoke__   State __Massachusetts__   Date __8-23__, 19 95

To induce General Motors Acceptance Corporation, hereinafter called GMAC, to extend or continue credit to

__Camilleri Bros. Chevrolet of Holyoke, Inc__ hereinafter called Dealer, the undersigned person or persons does hereby unconditionally guarantee the payment of all indebtedness of Dealer to GMAC, including any indebtedness assigned to GMAC arising in connection with the GM Instalment Sales Finance Plan, together with all costs, expenses and attorneys' fees incurred by GMAC in connection with any default of Dealer.

Any liability of the undersigned hereunder shall not be affected by, nor shall it be necessary to procure the consent of the undersigned or give any notice in reference to, any settlement, or variation of terms of any obligation of the Dealer, or of a guarantor or any other interested person, by operation of law or otherwise; nor by failure to file, record or register any security document. The undersigned recognizes that GMAC may utilize various means of attempting to verify Dealer's compliance with its credit terms, including periodic collateral checks and examinations of books and records, and hereby expressly agrees that such steps are for the sole benefit of GMAC and the adequacy of performance of such checks and examinations shall not be considered as a defense to or mitigation of liability hereunder.

The undersigned does hereby expressly waive and dispense with notice of acceptance of this guaranty, notices of non-payment or non-performance, notice of amount of indebtedness outstanding at any time, protests, demands and prosecution of collection, foreclosure and possessory remedies. The undersigned hereby waives any right to require GMAC to (i) proceed against other persons or Dealer, (ii) advise the undersigned of the results of any collateral checks or examinations, (iii) require Dealer to comply with its agreement with GMAC, or (iv) proceed against Dealer or proceed against or exhaust any security.

This is a continuing guaranty and shall remain in full force and effect until forty-eight (48) hours after receipt by GMAC, at its office designated below, of written notice by the undersigned terminating or modifying same; provided, however, that such notice shall not operate to release the undersigned from liability hereunder with respect to any obligations incurred prior to the effective date of such notice.

Except as noted herein, GMAC has made no promises to Dealer or the undersigned to induce execution of this Guaranty and there are no other agreements or understandings, either oral or in writing, between GMAC and the undersigned affecting this Guaranty.

The obligation of all parties signing this guaranty, where more than one, shall be joint and several.

This guaranty may not be changed orally and shall bind and inure to the benefit of the heirs, administrators, successors and assigns of the undersigned and GMAC, respectively. If any part of this guaranty is not valid or enforceable according to applicable law, all other parts will remain enforceable.

Notwithstanding the generality of the above, if it is intended that this guaranty apply only to a specific loan(s) or advance(s) so indicate below and execute as indicated; if not, line out the space, initial the line out and execute as indicated:

**THIS GUARANTY AND THE PERFORMANCE HEREUNDER SHALL BE CONSTRUED AND DETERMINED ACCORDING TO THE LAW OF THE STATE OF NEW YORK.**

Witness __Michelle M. Rogers__   Guarantor __Thomas Camilleri__ L.S.
Address __17 Duda Dr. Easthampton, MA__   Address __99 Russellville Road, Southampton, MA__
Witness __Michelle M. Rogers__   Guarantor __Richard Camilleri__ L.S.
Address __17 Duda Drive Easthampton, MA__   Address __22 Tina Lane, Westfield, MA__

STATE OF __Massachusetts__
County of __Hampden__

On this __23rd__ day of __August__, 19 __95__, before me personally came and appeared

__Thomas Camilleri and Richard Camilleri__ known and known by me to be (one of) the person(s) described in and who executed this instrument and acknowledged that (t)he(y) executed the same as guarantor(s).

Accepted:
GENERAL MOTORS ACCEPTANCE CORPORATION

1700 West Park Drive, Westboro, MA
(Branch Office Location)

By ____

Notary Public in and for
__Hampden__
(County)

SIGN IN INK

GMAC 533 (Rev. 12-87)
PRINTED IN U.S.A. 7SM 12-87

# GUARANTY

City __Westboro_____ State __MASS__ Date __November 15__, 19 89

To induce General Motors Acceptance Corporation, hereinafter called GMAC, to extend or continue credit to

__Camilleri Bros. Chevrolet, Inc._____ hereinafter called Dealer, the undersigned person or persons does hereby unconditionally guarantee the payment of all indebtedness of Dealer to GMAC, including any indebtedness assigned to GMAC arising in connection with the GM Instalment Sales Finance Plan, together with all costs, expenses and attorneys' fees incurred by GMAC in connection with any default of Dealer.

Any liability of the undersigned hereunder shall not be affected by, nor shall it be necessary to procure the consent of the undersigned or give any notice in reference to, any settlement, or variation of terms of any obligation of the Dealer, or of a guarantor or any other interested person, by operation of law or otherwise; nor by failure to file, record or register any security document. The undersigned recognizes that GMAC may utilize various means of attempting to verify Dealer's compliance with its credit terms, including periodic collateral checks and examinations of books and records, and hereby expressly agrees that such steps are for the sole benefit of GMAC and the adequacy of performance of such checks and examinations shall not be considered as a defense to or mitigation of liability hereunder.

The undersigned does hereby expressly waive and dispense with notice of acceptance of this guaranty, notices of non-payment or non-performance, notice of amount of indebtedness outstanding at any time, protests, demands and prosecution of collection, foreclosure and possessory remedies. The undersigned hereby waives any right to require GMAC to (i) proceed against other persons or Dealer, (ii) advise the undersigned of the results of any collateral checks or examinations, (iii) require Dealer to comply with its agreement with GMAC, or (iv) proceed against Dealer or proceed against or exhaust any security.

This is a continuing guaranty and shall remain in full force and effect until forty-eight (48) hours after receipt by GMAC, at its office designated below, of written notice by the undersigned terminating or modifying same; provided, however, that such notice shall not operate to release the undersigned from liability hereunder with respect to any obligations incurred prior to the effective date of such notice.

Except as noted hereon, GMAC has made no promises to Dealer or the undersigned to induce execution of this Guaranty and there are no other agreements or understandings, either oral or in writing, between GMAC and the undersigned affecting this Guaranty.

The obligation of all parties signing this guaranty, where more than one, shall be joint and several.

This guaranty may not be changed orally and shall bind and inure to the benefit of the heirs, administrators, successors and assigns of the undersigned and GMAC, respectively. If any part of this guaranty is not valid or enforceable according to applicable law, all other parts will remain enforceable.

Notwithstanding the generality of the above, if it is intended that this guaranty apply only to a specific loan(s) or advance(s) so indicate below and execute as indicated; if not, line out the space, initial the line out and execute as indicated:

This guaranty and the performance hereunder shall be construed and determined according to the law of the State of New York.

Witness __Tannie S leo_____ Guarantor __Richard Camilleri_____ L.S.

Address __56 Skyline Dr. W.Springfield__ Address __22 Tina Lane, Westfield, MA 01085__

Witness __Tannie S leo_____ Guarantor __Thomas Camilleri_____ L.S.

Address __56 Skyline Dr. W.Springfield__ Address __99 Russelville Road, Southampton MA__

STATE OF __Massachusetts_____

County of __Worcester_____

On this __15th__ day of __November_____, 19 89, before me personally came and appeared

__Richard and Thomas Camilleri_____ to me known and known by me to be (one of) the person(s) described in and who executed this instrument and acknowledged that (t)he(y) executed the same as guarantor(s).

Accepted:
GENERAL MOTORS ACCEPTANCE CORPORATION

__Tannie S leo__
Notary Public in and for

__WESTBORO, MA.__
(Branch Office Location)

__Hampden__
(County)

By __J. Yenelopolos, asst sec.__

**SIGN IN INK**



# Used Vehicles: CAMILLERI BROS. CHEVROLET

FSO # 141

Data as of: 6/29/98

| Dealer # | VIN | New/ Used | Model Year | Model | Original Note Date | Current Note Date | Days O/S | Maturity Date | Original OSB | Current OSB | AWV | AWV +/- | Current Advance | Reduction $ | % | Codes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 315 | TZ007083 | U | 98 | PRIZM | 2/18/98 | 2/18/98 | 131 | 6/18/98 | 8,270.00 | 8,270.00 | 6,975.00 | 275.00 | 118.57% | 0.00 | 0% | FA U |
| 315 | SE014792 | U | 95 | GALANT | 6/10/98 | 6/10/98 | 19 | 12/10/98 | 8,860.00 | 8,860.00 | 8,212.50 | 387.50 | 107.88% | 0.00 | 0% | FA |
| 315 | SZ041594 | U | 95 | PRIZM | 3/10/98 | 3/10/98 | 111 | 9/10/98 | 7,160.00 | 7,160.00 | 5,650.00 | 200.00 | 126.73% | 0.00 | 0% | FA |
| 315 | RE089843 | U | 94 | GALANT | 6/3/98 | 6/3/98 | 26 | 12/3/98 | 8,560.00 | 8,560.00 | 7,012.50 | 337.50 | 122.07% | 0.00 | 0% | FA |
| 315 | RE106215 | U | 94 | GALANT | 5/6/98 | 5/6/98 | 54 | 11/6/98 | 7,860.00 | 7,860.00 | 7,012.50 | 337.50 | 112.09% | 0.00 | 0% | FA |
| 315 | TM140361 | U | 96 | CAVALIER | 2/18/98 | 2/18/98 | 131 | 8/18/98 | 7,420.00 | 7,420.00 | 7,550.00 | 0.00 | 98.28% | 0.00 | 0% | FA U L |
| 315 | T2153674 | U | 96 | BLAZER | 6/16/98 | 6/16/98 | 13 | 12/16/98 | 16,560.00 | 16,560.00 | 14,950.00 | 800.00 | 110.77% | 0.00 | 0% | FA U |
| 315 | S2169539 | U | 95 | CAMARO | 6/3/98 | 6/3/98 | 26 | 12/3/98 | 11,330.00 | 11,330.00 | 10,525.00 | 0.00 | 107.65% | 0.00 | 0% | FA |
| 315 | V1172396 | U | 97 | LUMINA | 6/16/98 | 6/16/98 | 13 | 12/16/98 | 11,160.00 | 11,160.00 | 11,150.00 | 350.00 | 100.09% | 0.00 | 0% | FA U |
| 315 | SB195738 | U | 95 | ASTRO VAN | 5/6/98 | 5/6/98 | 54 | 11/6/98 | 12,600.00 | 12,600.00 | 7,750.00 | – | 162.58% | 0.00 | 0% | FA U |
| 315 | SY205342 | U | 95 | BERETTA | 5/8/98 | 5/8/98 | 52 | 8/8/98 | 4,425.00 | 4,425.00 | 5,900.00 | 0.00 | 75.00% | 0.00 | 0% | FA |
| 315 | SK235238 | U | 95 | S TRUCK | 4/8/98 | 4/8/98 | 82 | 10/8/98 | 7,220.00 | 7,220.00 | 7,525.00 | 725.00 | 95.95% | 0.00 | 0% | FA U |
| 315 | TY251591 | U | 96 | CORSICA | 6/10/98 | 6/10/98 | 19 | 12/10/98 | 7,160.00 | 7,160.00 | 6,675.00 | 0.00 | 107.27% | 0.00 | 0% | FA U L |
| 315 | T2260985 | U | 96 | BLAZER | 6/2/98 | 6/2/98 | 27 | 12/2/98 | 16,160.00 | 16,160.00 | 14,950.00 | 800.00 | 108.09% | 0.00 | 0% | FA |
| 315 | N1483422 | U | 92 | REGAL | 3/4/98 | 3/4/98 | 117 | 9/4/98 | 5,350.00 | 5,350.00 | 6,225.00 | 0.00 | 85.94% | 0.00 | 0% | FA U L |
| 315 | T2511070 | U | 96 | JIMMY | 6/2/98 | 6/2/98 | 27 | 12/2/98 | 15,460.00 | 15,460.00 | 14,950.00 | 800.00 | 103.41% | 0.00 | 0% | FA U L |
| 315 | SM563383 | U | 95 | GRAND AM | 6/10/98 | 6/10/98 | 19 | 12/10/98 | 7,510.00 | 7,510.00 | 7,100.00 | 0.00 | 105.77% | 0.00 | 0% | FA |
| 315 | T7576919 | U | 96 | SUNFIRE | 3/25/98 | 3/25/98 | 96 | 9/25/98 | 8,820.00 | 8,820.00 | 8,175.00 | 0.00 | 107.89% | 0.00 | 0% | FA |
| 315 | V7581887 | U | 97 | SUNFIRE | 5/13/98 | 5/13/98 | 47 | 11/13/98 | 9,060.00 | 9,060.00 | 8,800.00 | 0.00 | 102.95% | 0.00 | 0% | FA |
| 315 | SM621545 | U | 95 | GRAND AM | 5/27/98 | 5/27/98 | 33 | 11/27/98 | 7,760.00 | 7,760.00 | 6,875.00 | 0.00 | 112.87% | 0.00 | 0% | FA |
| 315 | PA646380 | U | 93 | SABLE | 6/3/98 | 6/3/98 | 26 | 12/3/98 | 5,140.00 | 5,140.00 | 4,950.00 | 0.00 | 103.84% | 0.00 | 0% | FA |
| 315 | SF651797 | U | 95 | INTREPID | 6/12/98 | 6/12/98 | 17 | 9/12/98 | 6,600.00 | 6,600.00 | 8,350.00 | 0.00 | 79.04% | 0.00 | 0% | FA |
| 315 | TS836342 | U | 96 | CAVALIER | 3/11/98 | 3/11/98 | 110 | 9/11/98 | 6,850.00 | 6,850.00 | 7,550.00 | 0.00 | 90.73% | 0.00 | 0% | FA |
| 315 | SC838222 | U | 95 | GRAND AM | 4/22/98 | 4/22/98 | 68 | 10/22/98 | 9,120.00 | 9,120.00 | 8,450.00 | 0.00 | 107.93% | 0.00 | 0% | FA |
| **Totals** | | | **24 Units** | | | | 55 | | 216,415.00 | 216,415.00 | 203,262.50 | 5,012.50 | | 0.00 | 0% | |

30-Jun-98

# New Ve. .les: CAMILLERI BROS. CHEVROLET

FSO # 141

Data as of: 6/29/98

| Dealer # | VIN | New/ Used | Model Year | Model | Original Note Date | Current Note Date | Days O/S | Original OSB | Current OSB | Reduction $ | Reduction % | Codes | Upfit Y/N |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 315 | 1G1JC1244W7101939 | N | 98 | CAVALIER | 7/31/97 | 7/31/97 | 333 | 13,528.05 | 13,528.05 | 0.00 | 0% | PD | |
| 315 | 2G1WL52M0W1102936 | N | 98 | LUMINA | 8/31/97 | 12/8/97 | 302 | 18,128.13 | 18,128.13 | 0.00 | 0% | DE | |
| 315 | 1GNDT13W1W2106007 | N | 98 | BLAZER | 8/18/97 | 8/18/97 | 315 | 26,344.61 | 26,344.61 | 0.00 | 0% | PD LT | |
| 315 | 1GCEK19R3XR112482 | N | 99 | GMT-400 | 7/4/98 | 7/4/98 | -5 | 26,094.37 | 26,094.37 | 0.00 | 0% | #LT | |
| 315 | 1GNCT18W9WK114649 | N | 98 | BLAZER | 9/1/1997 | 6/22/98 | 283 | 25,138.29 | 25,138.29 | 0.00 | 0% | DE LT | |
| 315 | 1G1ND52M1WY116334 | N | 98 | MALIBU | 9/17/97 | 3/26/98 | 285 | 16,944.40 | 16,944.40 | 0.00 | 0% | DE | |
| 315 | 1GNDT13W7W2119487 | N | 98 | BLAZER | 11/13/97 | 12/2/97 | 228 | 26,344.61 | 26,344.61 | 0.00 | 0% | DE LT | |
| 315 | 3GNEC18R5XG124767 | N | 99 | TAHOE C1500 | 5/22/98 | 5/22/98 | 38 | 24,349.04 | 24,349.04 | 0.00 | 0% | DE | |
| 315 | 2G1FP22G5W2141061 | N | 98 | CAMARO | 4/2/98 | 6/5/98 | 61 | 25,428.82 | 25,428.82 | 0.00 | 0% | PD LT | |
| 315 | 1GNCT18W9WK142533 | N | 98 | BLAZER | 11/10/97 | 11/10/97 | 231 | 25,225.29 | 25,225.29 | 0.00 | 0% | LT | |
| 315 | 1G1ND52T7W6143475 | N | 98 | MALIBU | 10/31/97 | 10/31/97 | 241 | 16,218.40 | 16,218.40 | 0.00 | 0% | PD LT | |
| 315 | 1GNDT13W6W2151163 | N | 98 | BLAZER | 10/24/97 | 10/24/97 | 248 | 26,212.37 | 26,212.37 | 0.00 | 0% | DE LT | |
| 315 | 1GNEL19W5W5175441 | N | 98 | ASTRO VAN | 4/1/98 | 6/22/98 | 89 | 23,049.47 | 23,049.47 | 0.00 | 0% | EI LT | |
| 315 | 2G1WL52M2W9176912 | N | 98 | LUMINA | 3/23/98 | 3/23/98 | 98 | 17,825.24 | 17,825.24 | 0.00 | 0% | | |
| 315 | 1G1NE52M4W6180814 | N | 98 | MALIBU | 1/26/98 | 3/26/98 | 154 | 18,489.90 | 18,489.90 | 0.00 | 0% | DE | |
| 315 | 1GNDT13W3W2191173 | N | 98 | BLAZER | 1/20/98 | 2/3/98 | 160 | 26,819.03 | 26,819.03 | 0.00 | 0% | DE LT | |
| 315 | 1G1JC5247W7193281 | N | 98 | CAVALIER | 11/18/97 | 11/18/97 | 223 | 13,865.38 | 13,865.38 | 0.00 | 0% | LT | |
| 315 | 1GNDM19V9W3WB193834 | N | 98 | ASTRO VAN | 5/15/98 | 5/15/98 | 45 | 20,040.35 | 20,040.35 | 0.00 | 0% | LT | |
| 315 | 1GNDM19W3WB194031 | N | 98 | ASTRO VAN | 5/17/98 | 5/17/98 | 43 | 20,040.35 | 20,040.35 | 0.00 | 0% | LT | |
| 315 | 1GNDM19W11WB194089 | N | 98 | ASTRO VAN | 5/17/98 | 5/17/98 | 43 | 20,040.35 | 20,040.35 | 0.00 | 0% | LT | |
| 315 | 1GNDM19VXXWB194429 | N | 98 | ASTRO VAN | 5/17/98 | 5/17/98 | 43 | 20,040.35 | 20,040.35 | 0.00 | 0% | EI LT | |
| 315 | 1GCCS1442WK196594 | N | 98 | S TRUCK | 3/6/98 | 6/9/98 | 115 | 13,105.80 | 13,105.80 | 0.00 | 0% | PD | |
| 315 | 2G1WX12K1XW9202041 | N | 98 | MONTE CARLO | 12/14/97 | 12/14/97 | 197 | 20,774.58 | 20,774.58 | 0.00 | 0% | LT | |
| 315 | 1GCEK14M8WE205631 | N | 98 | GMT-400 | 3/29/98 | 3/29/98 | 92 | 21,782.45 | 21,782.45 | 0.00 | 0% | LT | |
| 315 | 1GCDT14X7WK208721 | N | 98 | S TRUCK | 4/1/98 | 4/1/98 | 88 | 19,655.63 | 19,655.63 | 0.00 | 0% | LT | |
| 315 | 1GCCT19W4WK211863 | N | 98 | S TRUCK | 4/8/98 | 4/8/98 | 82 | 22,660.85 | 22,660.85 | 0.00 | 0% | PD | |
| 315 | 2G1WW12M1W9212587 | N | 98 | MONTE CARLO | 12/26/97 | 12/26/97 | 185 | 19,522.48 | 19,522.48 | 0.00 | 0% | PDEI | |
| 315 | 2G1WW12M3W9217810 | N | 98 | MONTE CARLO | 1/23/98 | 3/6/98 | 157 | 19,841.79 | 19,841.79 | 0.00 | 0% | EI LT | |
| 315 | 1GCCS1448W8221981 | N | 98 | S TRUCK | 6/19/98 | 6/24/98 | 10 | 11,680.99 | 11,680.99 | 0.00 | 0% | LT | |
| 315 | 1GCCS1445WK231550 | N | 98 | S TRUCK | 5/20/98 | 5/20/98 | 40 | 13,874.05 | 13,874.05 | 0.00 | 0% | EI LT | |
| 315 | 1GCGK24R2WE237873 | N | 98 | GMT-400 | 5/24/98 | 6/16/98 | 38 | 22,177.70 | 22,177.70 | 0.00 | 0% | EI LT | |

| Dealer # | VIN | New/ Used | Model Year | Model | Original Note Date | rent Note Date | Days O/S | Original OSB | Current OSB | Reduction $ | % | Codes | Uplft Y/N |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 315 | 2GCEK19M7W1238095 | N | 98 | GMT-400 | 3/12/98 | 6/11/98 | 109 | 25,561.52 | 25,561.52 | 0.00 | 0% | EI LT | EI LT |
| 315 | 1G1ND52MXW6244700 | N | 98 | MALIBU | 5/26/98 | 6/8/98 | 34 | 17,108.87 | 17,108.87 | 0.00 | 0% | EI | EI |
| 315 | 1GNDT13W3W2245412 | N | 98 | BLAZER | 5/3/98 | 5/3/98 | 57 | 27,060.01 | 27,060.01 | 0.00 | 0% | LT | LT |
| 315 | 1GCEC14WXW2265241 | N | 98 | GMT-400 | 6/22/98 | 6/22/98 | 7 | 16,271.70 | 16,271.70 | 0.00 | 0% | LT | LT |
| 315 | 2GCEK19R5W1273391 | N | 98 | GMT-400 | 5/13/98 | 5/13/98 | 47 | 25,952.01 | 25,952.01 | 0.00 | 0% | LT | LT |
| 315 | 2GCEK19M2W1274499 | N | 98 | GMT-400 | 5/14/98 | 5/14/98 | 46 | 24,241.59 | 24,241.59 | 0.00 | 0% | LT | LT |
| 315 | 2G1WL52M4W9280866 | N | 98 | LUMINA | 4/15/98 | 4/15/98 | 75 | 18,401.89 | 18,401.89 | 0.00 | 0% | | |
| 315 | 2G1WW12MXW9285585 | N | 98 | MONTE CARLO | 4/24/98 | 4/24/98 | 66 | 18,947.53 | 18,947.53 | 0.00 | 0% | | |
| 315 | 2G1WL52M1W9287015 | N | 98 | LUMINA | 4/26/98 | 4/26/98 | 64 | 17,193.18 | 17,193.18 | 0.00 | 0% | | |
| 315 | 2G1WX12K2W9287018 | N | 98 | MONTE CARLO | 4/26/98 | 4/26/98 | 64 | 20,776.58 | 20,776.58 | 0.00 | 0% | | |
| 315 | 2G1WL52M7W9287505 | N | 98 | LUMINA | 4/26/98 | 4/26/98 | 64 | 21,101.48 | 21,101.48 | 0.00 | 0% | | |
| 315 | 2G1WL52M6W9289084 | N | 98 | LUMINA | 4/30/98 | 4/30/98 | 60 | 17,488.38 | 17,488.38 | 0.00 | 0% | | |
| 315 | 2G1WX12K2W9300592 | N | 98 | MONTE CARLO | 5/14/98 | 5/14/98 | 46 | 21,357.08 | 21,357.08 | 0.00 | 0% | | |
| 315 | 1GNDX03E9WD301878 | N | 98 | VENTURE | 6/7/98 | 6/7/98 | 22 | 25,063.81 | 25,063.81 | 0.00 | 0% | LT | LT |
| 315 | 2G1WL52M2W9318045 | N | 98 | LUMINA | 6/10/98 | 6/10/98 | 19 | 17,395.68 | 17,395.68 | 0.00 | 0% | | |
| 315 | 1G1JC5241W7331557 | N | 98 | CAVALIER | 6/21/98 | 6/21/98 | 8 | 14,090.33 | 14,090.33 | 0.00 | 0% | | |
| 315 | 1GNFK16R4XJ357743 | N | 99 | K1500 | 6/7/98 | 6/7/98 | 22 | 33,988.80 | 33,988.80 | 0.00 | 0% | LT | LT |
| 315 | 1Y1SK5282W2404940 | N | 98 | PRIZM | 10/10/97 | 10/10/97 | 262 | 16,187.16 | 16,187.16 | 0.00 | 0% | | |
| 315 | 1Y1SK5281W2441039 | N | 98 | PRIZM | 6/12/98 | 6/12/98 | 17 | 16,210.40 | 16,210.40 | 0.00 | 0% | S | S |
| 315 | 2C1MR5222W6733599 | N | 98 | METRO | 6/18/98 | 6/18/98 | 11 | 12,239.01 | 12,239.01 | 0.00 | 0% | | |
| 315 | 3G1JC1246W5846760 | N | 98 | CAVALIER | 5/19/98 | 5/19/98 | 41 | 14,316.16 | 14,316.16 | 0.00 | 0% | | |
| 315 | 2CNBJ136XW6902193 | N | 98 | TRACKER | 8/26/97 | 8/26/97 | 307 | 19,134.91 | 19,134.91 | 0.00 | 0% | LT | LT |
| Totals | 53 Units | | | | | | 111 | 1,075,331.20 | 1,075,331.20 | 0.00 | 0% | | |

30-Jun-98





UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

GENERAL MOTORS ACCEPTANCE )
CORPORATION, )
                                                )
                  Plaintiff )
                                                )         CIVIL ACTION NO.
Vs. )         CA98-40128-NMG
                                                )
CAMILLERI BROS. CHEVROLET )
OF HOLYOKE, INC., CAMILLERI BROS., )
INC. doing business under the firm name )
and style, C & C SUBARU, THOMAS )
CAMILLERI,  RICHARD CAMILLERI )
INDIVIDUALLY, SOVEREIGN BANK, )
MASSACHUSETTS BUSINESS )
DEVELOPMENT CORPORATION AND )
THE BANK OF WESTERN )
MASSACHUSETTS )
                   Defendants )
                                                )

## REVISED CERTIFICATE OF SERVICE

I hereby certify on the date stated below that a copy of the Amended Verified Complaint

was served upon the following:

Peter Q. Montori, Esq.
85 Big Wood Drive
Westfield, MA  01085
*Counsel for Camilleri Bros. Chevrolet of
Holyoke, Inc., Camilleri Bros., Inc. doing
business under the firm name and style,
C & C Subaru, Thomas Camilleri and
Richard Camilleri Individually*

Steven L. Feldman, Esq.
Shapiro, Israel & Weiner, P.C.
100 North Washington Street
Boston, MA  02114-2128
*Counsel for Massachusetts Business
Development Corporation*

**Missing Vehicles - Camilleri Chevrolet**

| Dir # | N/U | Year | Model | Orig Note Da | Current Not | Days | Orig OSB | Total Curr OSB | Codes | VIN Number |
|---|---|---|---|---|---|---|---|---|---|---|
| 315 | U | 94 | GALANT | 03-Jun-98 | 03-Jun-98 | 26 | 8,560.00 | 8,560.00 | FA U | 4X3AJ56G9RE059843 |
| 315 | N | 98 | BLAZER | 18-Aug-97 | 18-Aug-97 | 315 | 26,344.61 | 26,344.61 | PD LT | 1GNDT13W1W2106007 |
| 315 | N | 97 | BLAZER | 18-Sep-97 | 22-Jun-98 | 283 | 25,138.29 | 25,138.29 | DE LT | 1GNCT18W9WK114649 |
| 315 | N | 98 | BLAZER | 13-Nov-97 | 02-Dec-97 | 228 | 26,344.61 | 26,344.61 | DE LT | 1GNDT13W7VN219487 |
| 315 | U | 98 | TAHOE C1500 | 22-May-98 | 22-May-98 | 38 | 24,349.04 | 24,349.04 | LT | 3GNEC18R5XG124757 |
| 315 | U | 96 | CAVALIER | 18-Feb-98 | 18-Feb-98 | 131 | 7,420.00 | 7,420.00 | FA U | 1G1JC1247TM140361 |
| 315 | N | 98 | MALIBU | 31-Oct-97 | 31-Oct-97 | 241 | 16,218.40 | 16,218.40 | | 1G1ND52T7W6143475 |
| 315 | N | 96 | BLAZER | 24-Oct-97 | 24-Oct-97 | 248 | 26,212.37 | 26,212.37 | PD LT | 1GNDT13W9W2151163 |
| 315 | U | 96 | BLAZER | 16-Jun-98 | 16-Jun-98 | 13 | 16,560.00 | 16,560.00 | FA U LT | 1GNDT13W6T2153674 |
| 315 | N | 97 | LUMINA | 16-Jun-98 | 16-Jun-98 | 13 | 11,160.00 | 11,160.00 | FA U | 2G1WL52M5V1172396 |
| 315 | N | 98 | ASTRO VAN | 01-Apr-98 | 22-Jun-98 | 89 | 23,049.47 | 23,049.47 | EI LT | 1GNEL19W5WB175441 |
| 315 | N | 98 | LUMINA | 23-Mar-98 | 23-Mar-98 | 98 | 17,825.24 | 17,825.24 | | 2G1WL52M2W3175912 |
| 315 | N | 95 | ASTRO VAN | 06-May-98 | 06-May-98 | 54 | 12,600.00 | 12,600.00 | FA U LT | 1GBEL19W6S8195736 |
| 315 | U | 95 | ASTRO VAN | 01-Apr-98 | 01-Apr-98 | 89 | 19,655.63 | 19,655.63 | LT | 1GC0T14X7VK208721 |
| 315 | N | 98 | S TRUCK | 19-Jun-98 | 24-Jun-98 | 10 | 11,680.99 | 11,680.99 | EI LT | 1GCCS1448W8231981 |
| 315 | U | 95 | S TRUCK | 08-Apr-98 | 08-Apr-98 | 82 | 7,220.00 | 7,220.00 | FA U LT | 1GCCS1449KS235238 |
| 315 | N | 98 | GMT-400 | 24-May-98 | 16-Jun-98 | 36 | 22,177.70 | 22,177.70 | EI LT | 1GCGK24R2WE237873 |
| 315 | N | 98 | GMT-400 | 12-Mar-98 | 11-Jun-98 | 109 | 25,561.52 | 25,561.52 | EI LT | 2GCEK19M7W1238095 |
| 315 | N | 98 | BLAZER | 03-May-98 | 03-May-98 | 57 | 27,060.01 | 27,060.01 | LT | 1GNDT13W3W2245412 |
| 315 | U | 96 | BLAZER | 02-Jun-98 | 02-Jun-98 | 27 | 16,160.00 | 16,160.00 | FA U LT | 1GNDT13WXT2260985 |
| 315 | N | 98 | GMT-400 | 13-May-98 | 13-May-98 | 47 | 25,952.01 | 25,952.01 | LT | 2GCEK19R5W1273391 |
| 315 | N | 98 | MONTE CARLO | 24-Apr-98 | 24-Apr-98 | 66 | 18,947.53 | 18,947.53 | | 2G1WW12MXW9285585 |
| 315 | N | 98 | LUMINA | 26-Apr-98 | 26-Apr-98 | 64 | 21,101.48 | 21,101.48 | | 2G1WL52M7W9287505 |
| 315 | N | 98 | MONTE CARLO | 14-May-98 | 14-May-98 | 46 | 21,357.08 | 21,357.08 | | 2G1WX12K2W9300592 |
| 315 | N | 98 | LUMINA | 10-Jun-98 | 10-Jun-98 | 19 | 17,395.68 | 17,395.68 | LT | 2G1WL52M2W9318045 |
| 315 | N | 99 | K1500 | 07-Jun-98 | 07-Jun-98 | 22 | 33,988.80 | 33,988.80 | LT | 1GNFK16RAXJ357743 |
| 315 | U | 92 | REGAL | 04-Mar-98 | 04-Mar-98 | 117 | 5,350.00 | 5,350.00 | FA U | 2G4WF14L2N1483422 |

| 315 | U | 96 | JIMMY | 02-Jun-98 | 02-Jun-98 | 27 | 15,460.00 | 15,460.00 | FA U LT | 1GKDT13W5T2511070 |
| 315 | U | 95 | GRAND AM | 10-Jun-98 | 10-Jun-98 | 19 | 7,510.00 | 7,510.00 | FA U | 1G2NE15MA5M563383 |
| 315 | U | 95 | GRAND AM | 22-Apr-98 | 22-Apr-98 | 68 | 9,120.00 | 9,120.00 | FA U | 1G2NW15MA5C838222 |
| 315 | N | 98 | TRACKER | 26-Aug-97 | 26-Aug-97 | 307 | 19,134.91 | 19,134.91 | LT | 2CNBJ13BXVW6902193 |
|  |  |  |  |  |  |  |  | 665,266.67 |  |  |
|  |  |  |  |  |  |  |  | 17419.05 | check in process - has not cleared yet |  |
|  |  |  |  |  |  |  |  | 682,685.72 |  |  |

Sh



## IN THE UNITED STATES DISTRICT
## COURT FOR THE DISTRICT OF MASSACHUSETTS

CASE NO.: CA98-40128-  NMG

GENERAL MOTORS ACCEPTANCE )
CORPORATION,   **Plaintiff** )
)
v. )
)
CAMILLERI BROS. CHEVROLET OF HOLYOKE, )
INC., CAMILLERI BROS., INC. doing business )
under the firm name and style, C & C SUBARU, )
THOMAS CAMILLERI, RICHARD CAMILLERI )
Individually, SOVEREIGN BANK, )
MASSACHUSETTS BUSINESS DEVELOPMENT )
CORPORATION, and THE BANK OF WESTERN )
MASSACHUSETTS )
**Defendants** )

### ANSWER OF THE DEFENDANTS'
### CAMILLERI BROS. CHEVROLET OF HOLYOKE, INC.,
### CAMILLERI BROS., INC. doing business
### under the firm name and style, C & C SUBARU,
### THOMAS CAMILLERI, RICHARD CAMILLERI Individually
### TO PLAINTIFF'S AMENDED VERIFIED COMPLAINT

The Defendants Camilleri Bros. Chevrolet of Holyoke, Inc., Camilleri Bros., Inc. doing business under the name and style, C&C Subaru, and Thomas Camilleri, and Richard Camilleri, individually ("the Defendants") do hereby respond to the allegations contained in the Plaintiff's Amended Verified Complaint as follows:

1.     The Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 1 of the Plaintiff's Amended Verified Complaint, and therefore deny same.

2.     The Defendants admit the allegations contained in paragraph 2 of the Plaintiff's Amended Verified Complaint.

3.     The Defendants state that the name of the corporation is Camilleri Bros., Inc., and not "Camilleri Bros.", but the Defendants otherwise admit the allegations contained in paragraph 3 of the Plaintiff's Amended Verified Complaint.

4.     The Defendants admit that Richard Camilleri is a resident of Westfield, Massachusetts and was the Treasurer of Camilleri Bros. Chevrolet and a fifty percent stockholder in C & C Subaru and its Treasurer, but the Defendants deny the remaining allegations contained in paragraph 4 of the Plaintiff's Amended Verified Complaint.

5.     The Defendants admit that Thomas Camilleri is a resident of Southampton, Massachusetts and was the President of Camilleri Bros. Chevrolet and a fifty percent stockholder in C & C Subaru and its President, but the Defendants deny the remaining allegations contained in paragraph 5 of the Plaintiff's Amended Verified Complaint.

6.     The Defendants state that they are not required to respond to paragraph 6 of the Plaintiff's Amended Verified Complaint.

7.     The Defendants state that they are not required to respond to paragraph 7 of the Plaintiff's Amended Verified Complaint.

8.     The Defendants state that they are not required to respond to paragraph 8 of the Plaintiff's Amended Verified Complaint.

9.     The Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 9 of the Plaintiff's Amended Verified Complaint, and therefore deny same.

       The Defendants note that numbering of the paragraphs of the Plaintiff's Amended Verified Complaint becomes out of sequence at this juncture and, in the interest of practical ease of reference, the Defendants will number its responses in the same fashion.

6.     The Defendants admit that the Defendant Camilleri Bros. Chevrolet entered into financing arrangements with the Plaintiff during the period from 1989 to 1996, state that the documents speak for themselves, and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 6 of the Plaintiff's Amended Verified Complaint, and therefore deny same.

8.     The Defendants admit that the Defendants Thomas Camilleri  and Richard Camilleri guaranteed certain obligations of Camilleri Bros. Chevrolet, state that the documents speak for themselves, and are without knowledge or information sufficient to

form a belief as to the truth of the allegations contained in paragraph 8 of the Plaintiff's Amended Verified Complaint, and therefore deny same.

9.      The Defendants deny the allegations contained in paragraph 9 of the Plaintiff's Amended Verified Complaint.

10.      The Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 10 of the Plaintiff's Amended Verified Complaint, and therefore deny same.

11.      The Defendants deny the allegations contained in paragraph 11 of the Plaintiff's Amended Verified Complaint.

12.      The Defendants deny the allegations contained in paragraph 12 of the Plaintiff's Amended Verified Complaint.

13.      The Defendants deny the allegations contained in paragraph 13 of the Plaintiff's Amended Verified Complaint.

14.      The Defendants deny the allegations contained in paragraph 14 of the Plaintiff's Amended Verified Complaint.

15.      The Defendants deny the allegations contained in paragraph 15 of the Plaintiff's Amended Verified Complaint.

16.      The Defendants admit that the Defendants Thomas Camilleri and Richard Camilleri are the sole stockholders of C & C Subaru, admit that certain assets of C & C Subaru were conveyed to a third party, admit that they are the owners of the real estate upon which the Chevrolet dealership was located, but deny the remaining allegations contained in paragraph 16 of the Plaintiff's Amended Verified Complaint.

17.      The Defendants deny the allegations contained in paragraph 17 of the Plaintiff's Amended Verified Complaint.

18.      The Defendants deny the allegations contained in paragraph 18 of the Plaintiff's Amended Verified Complaint.

19.      The Defendants deny the allegations contained in paragraph 19 of the Plaintiff's Amended Verified Complaint.

20.      The Defendants deny the allegations contained in paragraph 20 of the Plaintiff's Amended Verified Complaint.

21.     The Defendants deny the allegations contained in paragraph 21 of the Plaintiff's Amended Verified Complaint.

22.     The Defendants admit that the Defendant Thomas Camilleri  was the dealer of record for Camilleri Bros. Chevrolet, and deny the remaining allegations contained in paragraph 22 of the Plaintiff's Amended Verified Complaint.

23.     The Defendants deny the allegations contained in paragraph 23 of the Plaintiff's Amended Verified Complaint.

24.     The Defendants deny the allegations contained in paragraph 24 of the Plaintiff's Amended Verified Complaint.

25.     The Defendants deny the allegations contained in paragraph 25 of the Plaintiff's Amended Verified Complaint.

26.     The Defendants deny the allegations contained in paragraph 26 of the Plaintiff's Amended Verified Complaint.

27.     The Defendants deny the allegations contained in paragraph 27 of the Plaintiff's Amended Verified Complaint.

28.     The Defendants deny the allegations contained in paragraph 28 of the Plaintiff's Amended Verified Complaint.

29.     The Defendants deny the allegations contained in paragraph 29 of the Plaintiff's Amended Verified Complaint.

30.     In response to paragraph 30 of Count I of the Plaintiff's Amended Verified Complaint, the Defendants restate paragraphs 1 through 29 of this Answer.

31.     The Defendants deny the allegations contained in paragraph 31 of Count I of the Plaintiff's Amended Verified Complaint.

32.     The Defendants deny the allegations contained in paragraph 32 of Count I of the Plaintiff's Amended Verified Complaint.

33.     In response to paragraph 33 of Count II of the Plaintiff's Amended Verified Complaint, the Defendants restate paragraphs 1 through 32 of this Answer.

34.     The Defendants deny the allegations contained in paragraph 34 of Count II of the Plaintiff's Amended Verified Complaint.

35.     In response to paragraph 35 of Count III of the Plaintiff's Amended Verified Complaint, the Defendants restate paragraphs 1 through 34 of this Answer.

36.    The Defendants deny the allegations contained in paragraph 36 of Count III of the Plaintiff's Amended Verified Complaint.

37.    The Defendants deny the allegations contained in paragraph 37 of Count III of the Plaintiff's Amended Verified Complaint.

38.    The Defendants deny the allegations contained in paragraph 38 of Count III of the Plaintiff's Amended Verified Complaint.

39.    In response to paragraph 39 of Count IV of the Plaintiff's Amended Verified Complaint, the Defendants restate paragraphs 1 through 38 of this Answer.

40.    The Defendants deny the allegations contained in paragraph 40 of Count IV of the Plaintiff's Amended Verified Complaint.

41.    The Defendants admit that the Defendants Richard Camilleri and Thomas Camilleri owned all shares of stock of C & C Subaru, and deny the allegations contained in paragraph 41 of Count IV of the Plaintiff's Amended Verified Complaint.

42.    In response to paragraph 42 of Count V of the Plaintiff's Amended Verified Complaint, the Defendants restate paragraphs 1 through 41 of this Answer.

43.    The Defendants deny the allegations contained in paragraph 43 of Count V of the Plaintiff's Amended Verified Complaint.

44.    In response to paragraph 42 of Count VI of the Plaintiff's Amended Verified Complaint, the Defendants restate paragraphs 1 through 43 of this Answer.

45.    The Defendants deny the allegations contained in paragraph 45 of Count VI of the Plaintiff's Amended Verified Complaint.

46.    In response to paragraph 46 of Count VII of the Plaintiff's Amended Verified Complaint, the Defendants restate paragraphs 1 through 45 of this Answer.

47.    The Defendants deny the allegations contained in paragraph 47 of Count VII of the Plaintiff's Amended Verified Complaint.

48.    In response to paragraph 48 of Count VIII of the Plaintiff's Amended Verified Complaint, the Defendants restate paragraphs 1 through 47 of this Answer.

49.    The Defendants deny the allegations contained in paragraph 47 of Count VII of the Plaintiff's Amended Verified Complaint.

And further answering, the Defendants state that they are not required to respond to either the allegations of Counts IX, X, and XI or the allegations of the prayers for relief of the Plaintiff's Amended Verified Complaint.

## AFFIRMATIVE DEFENSES

1.     And further answering, the Defendants state that the Plaintiff's claims are barred by the applicable statutes of limitation.

2.     And further answering, the Defendants state that the Plaintiff's claims are barred by laches in that the Defendants have been prejudiced by the excessive delay of the plaintiff in seeking the relief requested.

3.     And further answering, the Defendants state that to the extent they had any obligations to the Plaintiff, such obligations have been fully, completely and properly satisfied.

4.     And further answering, the Defendants state that the Plaintiff's Amended Verified Complaint fails to state a claim upon which relief can be granted.

5.     And further answering, the Defendants state that to the extent the Plaintiff alleges claims of fraud, the allegations of the Plaintiff's Amended Verified Complaint do not present a claim with the specificity required.

6.     And further answering, the Defendants state that to the extent the Plaintiff alleges claims of fraud, any and all transfers of property by the Defendants were done for fair consideration.

WHEREFORE, the Defendants respectfully request that the court dismiss the Plaintiff's claims and enter judgment for the Defendants, together with their costs.
1.

The Defendants,
By Their Attorney

ATTORNEY PETER Q. MONTORI

Peter Q. Montori, BBO# 352280
85 Big Wood Drive
Westfield, MA 01085
(413) 564-0077

Dated:   September 28, 1999

6

## CERTIFICATE OF SERVICE

I, Peter Q. Montori, Esquire hereby certify that on the date stated below a copy of the foregoing Answer of the Defendants to Plaintiff's Amended Verified Complaint was served upon the Counsel of record in the action by mailing a copy of same, postage first class, to:

Paul Marshall Harris, Esquire
Gadsby & Hannah LLP
225 Franklin Street
Boston, MA 02110-2811

Jonathan R. Goldsmith, Esquire
Hendel & Collins, P.C
101 State Street
Springfield, MA 01103

Frank P. Fitzgerald, Esquire
Frank P. Fitzgerald, P.C.
95 State Street, Suite 1100
Springfield, MA 01103

Jeffrey Cohen, Esquire
Chappel, White LLP
99 Summer Street
Boston, MA 02110

Steven L. Feldman, Esquire
Shapiro, Israel & Weiner, P.C.
100 North Washington Street
Boston, MA 02114

Dated: 9/29/79

Peter Q. Montori